THIS OPINION IS A
PRECEDENT OF THE TTAB

Hearing:                              Mailed:
22 August 2006                        11 January 2007
                                      AD

**UNITED STATES PATENT AND TRADEMARK OFFICE**
_____

**Trademark Trial and Appeal Board**
_____

L. & J.G. Stickley, Inc.
v.
Ronald C. Cosser
_____

Cancellation No. 92040202
_____

David P. Miranda of Heslin Rothenberg Farley & Mesiti P.C.
for L. & J.G. Stickley, Inc.

Kenneth F. Florek of Hedman & Costigan, P.C. for Ronald C.
Cosser.
_____

Before Bucher, Drost and Cataldo, Administrative Trademark
Judges.

Opinion by Drost, Administrative Trademark Judge:

Respondent, Ronald C. Cosser, is the owner of two

registrations.  The first (No. 2,028,089) issued January 7,

1997 for the following mark:

# THE CRAFTSMAN



In addition to the English words, The Craftsman, the mark also includes the words ALS IK KAN.  The registration contains the following translation statement:  The "Finnish words 'ALS IK KAN' roughly translate in English to 'If I can, all I can.'"[1]  The mark is also described as containing a drawing of a woodworker's compass.  The goods are identified as "wood furniture polish" in Class 3.  The registration is based on an application filed on September 17, 1993.  The date of first use and first use in commerce is listed as May 1978 and a Section 8 affidavit has been accepted.

---

[1] During the course of the proceeding, the words were often described as being Flemish.  Stipulated Evidence, Ex. 7, 002040 ("Even the Flemish motto Stickley chose for his shopmark, 'Als ik kan,' was borrowed directly from [William] Morris") (footnote omitted).  See also Cathers dep. at 86 ("The word Aliskkan was used by William Morris on tapestries that he wove for his own house, and he did that because he was an admirer of the Flemish painter Jan van Eyck, who signed his paintings with Aliskkanne in the 15th Century.  Gustav Stickley was an admirer of William Morris").  Whether the words are Flemish or Finnish is not material to our decision.

Respondent's second registration (No. 2,182,183) is for the following mark:



The registration similarly describes the mark as including the English words, The Craftsman, and "the Finnish words 'ALS IK KAN' which roughly translate in English to 'if I can, all I can.'" The mark contains a similar design. The goods are identified as "furniture" in Class 20. The registration issued on August 18, 1998, and it is based on an application filed on June 11, 1997. The date of first use and first use in commerce is listed as January 1982. Office records now indicate that a Section 8 affidavit has been accepted

On December 31, 2001, petitioner (L. & J.G. Stickley, Inc.) filed a petition to cancel respondent's registrations on the ground that "Petitioner and its predecessors in interest have been using the mark THE CRAFTSMAN, ALS IK KAN

and Woodworker's Compass design on its furniture and related products since at least as early as 1901. Petitioner continues to use said marks on its furniture and related products." (Petition at 2). "In view of the similarity of the respective marks and the related nature of the goods of the respective parties, it is alleged that respondent's registered composite marks so resemble Petitioner's marks previously used by Petitioner in the United States, as to be likely to cause confusion, or to cause mistake or to deceive." Petition at 3.

Petitioner also alleged that "The CRAFTSMAN name" and the "ALS IK KAN and Woodworker's Compass design are unmistakably associated with Petitioner and Petitioner's predecessor in interest, Gustav Stickley. Use of the mark suggests to those in the furniture trade as pointing uniquely and unmistakably to Petitioner." Petition at 3-4. Petitioner also alleges that respondent committed fraud when he filed his applications without acknowledging petitioner's rights in the mark.[2] In addition, petitioner maintains that

---

[2] The record does not support that respondent committed fraud by failing to acknowledge petitioner's use. Space Base Inc. v. Stadis Corp., 17 USPQ2d 1216, 1218-19 (TTAB 1990) (It "is settled that there can be no fraud by reason of a party's failure to disclose the asserted rights of another person, including a prior applicant, unless that person is known to possess a superior or a clearly established right to use, and we see nothing in applicant's counterclaim that indicates that opposer was aware of applicant's superior, if any, or a 'clearly established,' right to use"). The record does not indicate that petitioner's rights were clearly established and that they should have been disclosed.

respondent's registrations are void because he failed to use the marks on the goods at the time he applied for registration, that he failed to use the marks in commerce, and that he failed to use the mark for three consecutive years with no intent to resume use.

Respondent denied the salient allegations of the petition to cancel. Petitioner subsequently filed an amended petition to cancel that it alleged "does not set forth any new causes of action, but rather corrects Mr. Cosser's address; clarifies that Stickley used the marks in question as a service mark as well as a trademark; and deletes and adds certain allegations regarding Mr. Cosser's fraud." Stickley's Motion to Amend, p.3. Respondent also denied the salient allegations of the amended complaint and as affirmative defenses he alleges that petitioner has never acquired any rights in the marks and that any rights petitioner may have acquired were abandoned prior to respondent's adoption of his marks. An oral hearing was held on August 22, 2006.[3]

---

[3] After the case was briefed, the parties filed a series of papers. See Petitioner's letter dated June 16, 2006 (enclosing, inter alia, the decision in the case of L. & J.G. Stickley, Inc. v. Cosser, No. 5:02-CV-1542 (N.D.N.Y. May 22, 2006)); Respondent's letter dated June 19, 2006 to petitioner; Respondent's correspondence dated June 30, 2006 (enclosing a Notice of Appeal of the May 22, 2006 decision); and Respondent's letter dated July 28, 2006. We have noted the district court's decision and its subsequent appeal and the arguments concerning its applicability. We have not considered the other arguments or facts presented by the parties after the briefing in the case was completed.

## The Record

The record consists of the following items:  the files of the involved registrations; the trial testimony deposition of respondent, Ronald Cosser, with exhibits; the discovery depositions submitted by stipulation, of:

1. Petitioner's president, Alfred Audi, with accompanying exhibits,

2. Furniture historian, David Cathers, with accompanying exhibits,

3. Respondent with accompanying exhibits,

4. Respondent's customer, Bernard Dill, with accompanying exhibits; and,

5. Respondent's retired partner, Lyle Noreault, with accompanying exhibits; and

the testimony of Gustav Stickley, III from a U.S. district court case, with exhibits, also submitted by stipulation[4]; and numerous documents and publications submitted by both parties by notices of reliance.

## Background

The allegations in this case involve facts that go back nearly one hundred years.  Therefore, we set out the following list of facts to provide an historical reference for the current dispute.

---

[4] Respondent moved in his brief to strike this testimony because he alleged that it was "inaccurate" because it did not contain all the designated pages.  Brief at 27-28.  Respondent attached the missing pages to his brief and petitioner has not objected to their consideration (Reply Brief at 9 n.4).  Therefore, respondent's objection is moot.

The genesis of this dispute begins in the early 1900's, and it involved the activities of Gustav Stickley. Gustav Stickley was an artisan who achieved some fame as a leader of the Arts and Crafts movement in American design and he designed and sold a type of furniture that is known as Mission furniture.

> The Arts and Crafts movement, which rejected machine manufacturing and sought a return to craftsmanship, developed at the turn of the century in response to the Industrial Revolution. In the United States, one of the foremost promoters of the Arts and Crafts movement was Gustav Stickley, a furniture maker. The style of furniture made by Gustav Stickley and others in the movement is commonly called "Mission furniture" and is known for its severely plain and rectilinear style visually enriched only by expressed structural features and the warm tones of the wood.

L. & J.G. Stickley Inc. v. Canal Dover Furniture Co., 79 F.3d 258, 38 USPQ2d 1202, 1203 (2d Cir. 1996) (internal citation with quotation omitted).

Gustav Stickley died in 1942. Stipulated Evidence, Ex. 8, 002020).[5] He had four brothers. Cathers dep. at 12. Leopold (died 1957) and John George (died 1921) worked together in the furniture business and founded L. & J.G. Stickley, Inc. Id. at 002020 and 002003.

On October 8, 1901, the Patent Office issued Registration No. 37,182 to the Gustav Stickley Co. for the following mark for furniture (Stipulated evidence, Ex. 3):

---

[5] This evidence comes from a book entitled *Furniture of the American Arts and Crafts Movement – Stickley and Roycroft Mission*



Gustav Stickley received a trademark registration (No. 56,425) for CRAFTSMAN for furniture on September 25, 1906 and THE CRAFTSMAN for a monthly magazine on June 15, 1909 (No. 74,104). Stipulated evidence, Exhibits 4 and 5. These registrations have long since expired.

Despite some initial success, Mr. Stickley's enterprises went bankrupt in 1916. See Cathers dep. at 63 ("In December of 1916 … his enterprise was bankrupt"); Audi dep. at 25 ("Q. What's the last date you're aware of that the mark was used on furniture? A. Again I don't pose as an expert. From my readings, I would guess somewhere between 1915 and 1917").

After the bankruptcy, there was little, if any, use of THE CRAFTSMAN, ALS IK KAN, or the woodworker's compass design marks. Petitioner's witness, Daniel Cathers,[6]

---

*Oak* (1981) by David M. Cathers. Mr. Cathers is the same David Cathers who testified for petitioner. Stipulated Evidence Ex. 9.

[6] We have taken into consideration the fact that Mr. Cathers admittedly is not a disinterested witness. Mr. Cathers acknowledged that he was testifying out of a sense of gratitude toward the Audis and he "would like to have these trademarks stay with the Stickley Company." Cathers dep. at 56.

testified that: "the word 'Craftsman' and the Joiners Compass appeared in a 1922 L & J.G. Stickley – the word Handcraft and hand screw also appeared in the catalogue, but they were not cojoined marks." Cathers dep. at 77. See also Stipulated Evidence, Ex. 8, 002016, and Ex. 9. Mr. Cathers was also asked if he had anything else besides the catalog that "would indicate there was use of the Joiners Compass with the word Alsikkan between 1916 and 1950." His response was "No." Cathers dep. at 77.

In his book, Mr. Cathers reports that:

L. & J.G. Stickley had adopted a new mark by early 1918. This was a circular red-and-yellow decal, showing the word "Handcraft" and the handscrew and the word "Craftsman" and the joiner's compass…

By the end of that year, Gustav Stickley's name had been dropped from these ads and was replaced by the more impersonal "Stickley Manufacturing Company." His daughter, Barbara Wiles, told us that Gustav, a strong-willed, domineering man, only worked for about six months before he and Leopold came to a parting of the ways, and this is probably why his name was dropped from the ads.

Stipulated Evidence, Ex. 9 002015.

The next use of part of the mark occurs in a book entitled *The Story of a Developing Furniture Style* published by L. & J.G. Stickley Inc. with a copyright date of 1950. Stipulated Evidence, Ex. 10. On the last numbered page of the book (p. (52), Id. at 001832), the following information appears:



### Pride of Craft

From the earliest dawn of history, artists and creative workers have identified the works of their hands and brains by some distinctive symbol or signature. These marks have come to be a sign of genuine value, a guarantee of authenticity, a certificate of craftsmanship recognized by the collector and neophyte alike.

Throughout the 50 years of its history, Stickley of Fayetteville has applied certain identifying marks and branded symbols to the various pieces—marks that have taken their place proudly alongside the labels of the great cabinetmakers of all ages, lending prestige to the owner and value to the piece. Herewith are reproduced the hot-brands and affixed labels to be found on genuine Stickley pieces, in accordance with type and date of manufacture.

Petitioner's principal was asked: "Other than Stickley 3 [See display above], what use was there of either the cojoined mark or the compass with Als ik kan in the period from 1950 to the present? A. Well, the use was mainly we were holding the brands in esteem. We had them on display. And we used the term Als ik kan frequently as our credo." Audi dep. at 68.

The witness was then asked: "When you say holding in esteem what does that mean?" Mr. Audi explained that Gustav Stickley "is world renowned, famous, and his brand was held in the highest esteem by the company and we had – we were looking for an opportunity to use that brand, and until we

10

made mission furniture it didn't make sense for us to use it since he had no input into the development of the colonial furniture." Id.[7]

Petitioner refers to one other use of the mark, in its Fayetteville, New York, factory showroom. "Well, there was a framed copy of the back of this book showing the four brands, the Stickley of Fayetteville, the paper label, the Leopold Stickley original, the hand clamp showing Stickley of Fayetteville, and the Gustav mark Als ik kan in the center." Audi dep. at 69. The witness described the display as being "about 18 by 24 inches" and it was displayed by the front door. Audi dep. at 70. It was removed sometime in the 1980's and neither the display nor a photograph of the display is available. Id. It appears that the display was seen by petitioner's witness, Mr. Cathers, and respondent's partner, Mr. Noreault. Cathers dep. at 76; Noreault dep. at 12.

Mr. Audi was also asked if Stickley has "made any use of the mark Craftsman or the Craftsman since 1950?" His answer was "when you mean use of the mark, not on furniture but we have certainly mentioned it in literature and seminars and training sessions, that that was the name of

---

[7] Interestingly, while petitioner may have held Gustav Stickley's brand in high esteem, there was no direct mention of Gustav Stickley in its catalogs of record in 1977 and 1980. See Stipulated Evidence, Exhibits 12 and 13.

Gustav's company."  Audi dep. at 102.  These seminars might have started in 1983 or 1984.  Audi dep. at 104.

In the 1970s, petitioner sold some original L. & J.G. Stickley and Gustav Stickley furniture but this was all used furniture.  Audi dep. at 146-148.

Petitioner's witness, Mr. Cathers, testified that in 1973 he bought his first piece of Gustav Stickley furniture and he went on to testify that "in 1973, almost nothing was known about Stickley furniture."  Cathers dep. at 10.

In 1977, petitioner published a catalog (Stipulated Evidence, Ex. 12)[8] entitled:

> Cherry Valley Furniture
> STICKLEY
> A Living American Tradition

Page 4 of the catalog has the caption "'Als ik Kan': the pride of craftsmanship."  The first paragraph goes on to explain:

> The Stickley trademark "Als ik Kan," from the Flemish painter Jan van Eyck, is loosely translated "to the best of my ability."  It is epitomized in these unique construction features which help to make Stickley the most durable furniture being crafted today.

---

[8] Petitioner's witness, Mr. Audi, was asked how he knew that the catalog (Bates number 1746 to 1780) was the 1977 catalog.  The witness responded:  "We always had a code in here to give us the date, and my wife said 'over the past three years' [in the catalog].  We bought the company in March of 1974.  Three years hence would be 1977.  That would be over the past three years."  Audi dep. at 92-93.

"Als ik Kan": the pride of craftsmanship

In addition to explaining the quality features of petitioner's furniture, at the bottom of the page is a description of "Stickley Furniture Dressing," which is claimed to give "full play to the color and unique figuration of the wood." Id. Similar information was also found in subsequent catalogs. Stipulated Evidence, Exhibits 13 and 14.

In the 1979-1981 timeframe, petitioner's principal admits that he saw respondent's use of the mark on furniture polish and furniture restoration services.

> Are you aware that Ron [Cosser] uses the trademark The Craftsman with a woodworker's compass and words Als ik kan in it?
>
> A. Yes.
>
> Q. When did you first become aware of that? And when I say use, use in any form.
>
> A. I can't put an exact date on it. I think it was '79 or '80, 1980, 1981 maybe.
>
> Q. And what use was that?
>
> A. I saw it on a polish can. I saw it on his truck a little bit later. It was a parcel delivery van where he had it on the truck.

13

Q. It was displayed on the side of the truck?

A. Yeah, yes.

Q. You said a parcel delivery van. Do you know what he was delivering in the truck?

A. He was doing refinishing and making polish and maybe reupholstering as well, repairing.

See Respondent's Notice of Reliance dated January 28, 2005, Audi dep. at 94-95. Subsequently, Mr. Audi testified he was not sure what label respondent was using on furniture polish. Audi dep. at 156.

Mr. Cosser testified that he began using the mark on furniture polish in 1978 and that he has continuously used the mark on furniture polish since that time. Cosser dep. at 26 and 55, Ex. M2 (polish sales ledger). Respondent has no records concerning the sale of furniture polish prior to 1994. Crosser dep. at 147. Specifically, when asked if he had "any proof of sale of your furniture polish in interstate commerce prior to 1994," respondent replied: "There would be no reason for me to keep records like that." Cosser dep. at 147.

Regarding respondent's use of his mark on furniture, respondent did not have much evidence.

Did you put any of the registered trademarks on these, on this furniture prior to the commencement of this proceeding?

A. Yes, I did.

Q. Can you show me a photograph of one of those pieces of furniture?

14

A. No.  I can't David.

Cosser dep. at 107.

Respondent was further pressed for evidence that he used the mark on furniture.

Q. You showed me the exhibits, Exhibit Cosser N2, that shows a copy of a mark that you stamped on a piece of wood and you gave it to your attorney in this case.

You can't show me a piece of furniture that you sold to someone that has this mark stamped on it, can you?

A. We don't keep track of every piece of furniture that we sell, David.

Q. I'm not asking for every piece of furniture that you sold.  I'm asking for one piece of furniture that you sold and you can't show me that?

A. We don't keep track of our furniture, David, once it's sold.

Cosser dep. at 108.

Respondent's invoices for furniture or furniture-related services did not contain the wording "Als ik Kan."

Cosser dep. at 124.

Regarding one specific customer (Mr. Dill) respondent testified:

Q. Do you know if any of this furniture that you sold to Mr. Dill had any of the logos at issue, trademarks at issue on the furniture?

A. I believe each piece that was delivered, I believe each case, it was me delivering them personally.  I put a business card in each of them and in some cases, our polish---

Cosser dep. at 125.

A copy of the card (Cosser Dep. Ex. O2) is shown below:

15



However, Mr. Dill testified as follows about respondent's use of trademarks on or in association with his furniture:

Q.  Between 1986 and the present about how many pieces has Mr. Cosser made for you?

A. I've got probably close to a dozen.

Q. And those were all furniture pieces?

A. Furniture pieces.

Q. Do any of those furniture pieces have any brand or label imprinted upon them?

A. No.

Q. Do any of those furniture pieces have a decal with a name or logo on it?

A. Of any type of logo?

Q. Yes.

A. No.

*****

Was there anything inside any of the furniture that you purchased that contained any sort of logo or brand on it?

A. No.  I mean these pieces were all made from scratch. I don't know if you're getting at did he put his logo on?

Q.  I'm not getting at anything, I'm just asking what was on the furniture?

A.  Yes, there was nothing because all these pieces were made from scratch…

Dill dep. at 6-7.

Mr. Dill also went on to testify that he did buy "a shaker styled end table [and] another piece was three small cabinets… [and] a bird feeder" that Mr. Cosser "had already made without you in particular in mind that were just in his shop." Dill dep. at 8. These pieces did not "have any sort of brand or logo on them." Id.

Respondent was also asked:

> Q. Mr. Cosser, do you have any proof that the mark was placed on any of the furniture identified in here?
>
> A. Only that it came through – through my shop and the regimen for this chair is before the chair is assembled, the brand is put on the very back of the chair.

Cosser dep. at 128.

> Q. Do you have any furniture that has got that float transfer on it?
>
> Do you have a photograph with a transfer of that float transfer on it?
>
> A. I don't think I've ever photographed my own mark on my own furniture.

Cosser dep. at 134. Many of respondent's ads for his furniture do not show the entire mark, particularly the words ALS IK KAN. Cosser dep. Exhibit C3 and D3.

Respondent's partner, Mr. Noreault, could provide no evidence on the question of the trademark use on furniture:

> Q. And when you first started making furniture do you recall if the partnership, you or Mr. Cosser, put any markings or labels on the furniture?

17

A. No.

*****

Q. Do you have any furniture pieces that were made by the partnership that contain any markings or labels on them?

A. No.

Q. Do you know anybody who does?

A. No.

Noreault dep. at 41-42.[9]

Indeed, when Mr. Noreault was asked: "While you were at the partnership can you tell me how the marks of the partnership were used," he replied "No." Noreault dep. at 48.

Respondent was also asked about furniture that he may have hand signed. In response to a question concerning whether respondent had evidence of sales, he responded "No, not after 20 years." Cosser dep. at 136.

Respondent did provide copies of his labels for furniture polish that show the words THE CRAFTSMAN ALS IK KAN and the woodworkers compass. Cosser dep. Exhibits Q, S, and T.

Beginning in 1987 or 1988, consumers' interest in Mission furniture and Gustav Stickley in particular dramatically increased. "Gustav's grandson auctioned off

---

[9] We note that the witness testified that he "had a stroke a couple years ago and my memory is not the best in the world." Noreault dep. at 6-7.

about 40 pieces of his, Gustav's private furniture, his private collection. And that brought him, netted him, about $800,000. Record prices were paid. Barbara Streisand, probably the most famous purchased a Columbus Avenue sideboard for 363,000." See Audi dep. at 98.

Petitioner, in April of 1989, "came out with 33 pieces of mission oak, and that was a reissue of both Gustav Stickley and Leopold Stickley's famous pieces." See Audi dep. at 99.

On September 17, 1993, respondent filed his trademark application for wood furniture polish that would issue on January 7, 1997 as Registration No. 2,028,089.

On June 11, 1997, respondent filed his trademark application for furniture that would issue on August 18, 1998 as Registration No. 2,182,183.

On October 11, 1994, respondent sent a letter to petitioner's principal. In that letter, respondent made the following statement: "As you are well aware, for the past 16 years, I have owned the rights to use **The Craftsman Workshops**, the logo, and the words "*als ik kan*" in conjunction with furniture restoration and building." See Stipulated Evidence, Ex. 19, 001535; Audi dep. at 132 and Ex. 19. The letter contained the following letterhead (Stipulated Evidence, Ex. 19):



The words in the woodworker's compass above are "Als ik

Kan."

Preliminary Matters

> A party claiming prior use of a registered mark may
> petition to cancel the registration on the basis of
> such prior use pursuant to section 14 of the Lanham
> Act.  15 U.S.C. Section 1064.  The burden of proof in a
> cancellation proceeding for a service mark registration
> is no different from that for a trademark or
> certification mark.  Thus, a presumption of validity
> attaches to a service mark registration, and the party
> seeking cancellation must rebut this presumption by a
> preponderance of the evidence.

West Florida Seafood Inc. v. Jet Restaurants Inc., 31 F.3d

1122, 31 USPQ2d 1660, 1662 (Fed. Cir. 1994).

Furthermore, the party petitioning to cancel a

federally registered trademark must plead that it has

standing and that there is a valid ground for the

cancellation of the registration.  Young v. AGB Corp., 152

F.3d 1377, 47 USPQ2d 1752, 1754 (Fed. Cir. 1998) ("Section

14 has been interpreted as requiring a cancellation

petitioner to show (1) that it possesses standing

to challenge the continued presence on the register of the

subject registration and (2) that there is a valid ground

why the registrant is not entitled under law to maintain the

registration") (internal quotation marks omitted).  See also

Cunningham v. Laser Golf Corp., 222 F.3d 943, 55 USPQ2d 1842, 1844 (Fed. Cir. 2000).

For standing, petitioner asserts its ownership of common law rights in "the mark THE CRAFTSMAN, ALS IK KAN and Woodworker's Compass on its furniture and related products since at least as early as 1901. Petitioner continues to use said marks on its furniture and related products." Petition at 2. Respondent argues petitioner does not have standing because it "has never used the subject mark, nor can it show any rights derived from an institution with Gustav Stickley." Respondent's Brief at 29.

In this case, petitioner claims priority because of its ownership and rights in THE CRAFTSMAN, ALS IK KAN, and the woodworker's compass. Petitioner has provided evidence that it has used the term ALS IK KAN in its 1977 catalog. Therefore, it has demonstrated a real interest in the proceeding, and it has established its standing.[10]

Priority

The first key issue in this case is the question of priority. We start by noting that the party seeking cancellation must rebut the presumption of a registration's

---

[10] The first ground for cancellation asserted by petitioner is that of likelihood of confusion. We note that at the time this cancellation proceeding was brought both of respondent's registrations were less than five years old, and therefore this ground for cancellation is available. See Trademark Act Section 14(1). 15 U.S.C. § 1064.

21

validity by a preponderance of the evidence. West Florida Seafood, 31 USPQ at 1662. See also Cerveceria Centroamericana S.A. v. Cerveceria India Inc., 892 F.2d 1021, 13 USPQ2d 1307, 1309 (Fed. Cir. 1989) ("[I]n a [trademark registration] cancellation for abandonment, as for any other ground, the petitioner bears the burden of proof. Moreover, the petitioner's burden is to establish the case for cancellation by a preponderance of the evidence"); Martahus v. Video Duplication Services Inc., 3 F.3d 417, 27 USPQ2d 1846, 1850 (Fed. Cir. 1993).[11]

Petitioner is seeking to cancel two of respondent's registrations. One registration (No. 2,028,089) issued on January 7, 1997, and it was based on an application filed on September 17, 1993. The second registration (No. 2,182,183) issued on August 18, 1998, and it was based on an application filed on June 11, 1997. The filing dates of the applications are significant because respondent can rely on these dates for his priority, and in order to prevail on priority, petitioner would have to establish an earlier date. 15 U.S.C. § 1057(c). See Brewski Beer Co. v. Brewski Brothers Inc., 47 USPQ2d 1281, 1284 (TTAB 1998) ("Of course,

---

[11] Eastman Kodak Co. v. Bell & Howell Document Management Products Co., 994 F.2d 1569 26 USPQ2d 1912, 1918 (Fed. Cir. 1993) (The "challenger's burden of proof in both opposition and cancellation proceedings is a preponderance of the evidence").

petitioner [who owns a registration] or respondent may rely on its registration for the limited purpose of proving that its mark was in use as of the application filing date"). See also Intersat Corp. v. International Telecommunications Satellite Organization, 226 USPQ 154, 156 n. 5 (TTAB 1985) ("The earliest date of first use upon which Intelsat can rely in the absence of testimony or evidence is the filing date of its application").

We find that for priority purposes respondent can only rely on the filing date as his priority date for furniture. As the Background section demonstrates, respondent's evidence of his use of the mark THE CRAFTSMAN, ALS IK KAN, and woodworker's compass design on furniture before his application's filing date is not persuasive. Respondent could not show a single use of his mark on furniture prior to his filing date and his customer (Mr. Dill), who purchased both custom-made and ready-made furniture from respondent beginning before the filing date of the application, stated unequivocally that the furniture did not have a mark or brand on it. He could not even corroborate respondent's testimony that respondent inserted business cards with the furniture. While respondent may have other

23

uses of his mark in association with services, this use would not support use as a trademark on furniture.[12]

Regarding respondent's use of his mark on furniture polish, petitioner's own witness admitted seeing respondent's use of the mark on furniture polish in New York in the 1979-1981 time frame. Even if this use was in intrastate commerce, it would provide a basis for respondent to have established rights in the mark prior to the constructive use date of his application.

> Just as an applicant in a use-based application can rely, for purposes of priority in a proceeding such as this, upon use (including use analogous to trademark use) prior to the filing date of its application, or even prior to its claimed use dates, an intent-to-use applicant is entitled to rely upon actual use, or use analogous to trademark use, prior to the constructive use date of the intent-to-use application. See Dyneer Corp. v. Automotive Products plc, 37 USPQ2d 1251 (TTAB 1995). (Intent-to-use applicant permitted to tack use analogous to trademark use to its constructive use date so long as applicant had continuing intent to cultivate association of mark with itself and its goods or services up until the filing date). Moreover, whether or not this prior use is strictly intrastate in nature is inconsequential. While interstate use is a prerequisite to federal registration, and applicant must file evidence of the same before any registration will issue, rights in the mark itself are not dependent upon interstate use. It is well established that rights in and to a trademark are created by use of the mark in either intrastate or interstate commerce.

---

[12] We note that respondent has submitted numerous exhibits that show use of his mark on various furniture-related services and/or use of the mark THE CRAFTSMAN by itself. See, e.g., Cosser dep. Exhibits A-E. These exhibits do not demonstrate that he has used the mark on furniture or furniture polish prior to the filing date of his applications.

Corporate Document Services Inc. v. I.C.E.D. Management Inc., 48 USPQ2d 1477, 1479 (TTAB 1998) (footnote omitted).

Respondent also submitted "a photostatic copy of the Craftsman furniture dressing" that shows virtually the same mark that is the subject of respondent's registration. Cosser dep. at 26 and Ex. Q.



Respondent was asked:

Q. "When did you use the label that appears in Cosser Q [see above]?

A. 1978 and part of '79. It shows our Genesee address in Fayetteville on the back side of your Bates No. 2186. It shows the Fayetteville, New York address.

Q. When were you at the Fayetteville address?

A. From '78 through '79.

*****

Q. Is this the label that you first sold the polish under?

A. Yeah.

Q. The one shown in Cosser Q?

A. Yeah…

Cosser dep. at 26-27.

As indicated earlier, respondent testified concerning his continuous use of the mark. Furthermore, respondent testified that his first shipment of this polish in interstate commerce occurred in 1979 as a result of an advertisement placed in Yankee magazine. Cosser discovery dep. at 226-227.

At this point, we take into consideration the Federal Circuit's admonition when we are determining dates of use for priority purposes:

> The TTAB concluded that each piece of evidence individually failed to establish prior use. However, whether a particular piece of evidence by itself establishes prior use is not necessarily dispositive as to whether a party has established prior use by a preponderance. Rather, one should look at the evidence as a whole, as if each piece of evidence were part of a puzzle which, when fitted together, establishes prior use. The TTAB failed to appreciate this. Instead, the TTAB dissected the evidence to the point that it refused to recognize, or at least it overlooked, the clear interrelationships existing between the several pieces of evidence submitted. When each piece of evidence is considered in light of the rest of the evidence, rather than individually, the evidence as a whole establishes by a preponderance that West used the "FAST EDDIE'S" mark prior to Jet's admitted first use of the mark.

West Florida Seafood, 31 USPQ2d at 1663.

Similarly, when we consider all the pieces of evidence concerning respondent's first use of his mark on furniture

polish, we conclude that respondent has a priority date of the end of 1978.[13]

Regarding petitioner's use of the mark, the issue of petitioner's priority date is more complicated.

> To establish priority, the petitioner must show proprietary rights in the mark that produce a likelihood of confusion. These proprietary rights may arise from a prior registration, prior trademark or service mark use, prior use as a trade name, prior use analogous to trademark or service mark use, or any other use sufficient to establish proprietary rights.

Herbko International Inc. v. Kappa Books Inc., 308 F.3d 1156, 64 USPQ2d 1375, 1378 (Fed. Cir. 2002) (citation omitted).

Petitioner attempts to trace its first use back to Gustav Stickley's use of the marks THE CRAFTSMAN and ALS IK KAN and woodworker's compass design at the beginning of the twentieth century. However, the evidence demonstrates that

---

[13] Obviously, by determining that respondent has a priority date of 1978, we reject petitioner's argument that respondent has committed fraud by filing an application without having used the mark. We add that petitioner has not demonstrated that respondent has abandoned his mark on furniture polish by failing to use the mark in commerce for a three-year period. We arrive at this conclusion based on the evidence discussed above despite the testimony of respondent and his partner, Mr. Noreault, on the subject of the use of the furniture polish that, at best, can be described as confusing. See, e.g., Noreault dep. at 38 ("Q. Did you ever participate in the making of furniture polish while you were working with the Craftsman Partnership? A. No.") and Cosser disc. dep. at 77:
Q. When did Lyle [Noreault] retire?
A. I don't know. I think I mentioned before, probably, seven – I think probably seven years ago, maybe eight years ago. I am not really sure.
Q. Up until then, he made the formula, is that correct?
A. Yep.

there was no use of the terms THE CRAFTSMAN, ALS IK KAN, or the woodworker's compass design from the time a catalog was published in 1922 until at least 1950. Petitioner has simply not shown, even if there were a connection between it and Gustav Stickley's original use of its mark at the beginning of the twentieth century, that this connection continued until the end of the twentieth century. This is not a case where the current petitioner is simply a successor to an earlier entity that subsequently became the petitioner. See, e.g., West Florida Seafood, 31 USPQ2d at 1664:

> Indeed, the pertinent inquiry in this case is simply whether a potential customer would have believed that someone was proclaiming to be engaged in restaurant services under the name "FAST EDDIE'S" at the time of the advertisements. That is undoubtedly what a potential customer would have believed in this case. Moreover, to the extent that the TTAB's decision suggests that West may be attempting to claim prior use for use that it cannot truthfully credit to itself, such a suggestion is nothing more than an unjustifiable refusal to recognize the connection between West Florida Seafood (the corporate name), "FAST EDDIE'S PLACE" (the trade name), and Edwin or E. Porter (the company's president). The TTAB erred in ignoring the rather obvious connection between these corporate, business, and personal "alter egos" operating as "FAST EDDIE'S."

See also Gaylord Bros., Inc. v. Strobel Products Co., 140 USPQ2d 72, 74 (TTAB 1963) ("When he ceased doing business under one name and continued that same business under another name, previously used, title of the mark remained with him, as it was always with him. There is

28

uncontradicted testimony that this person's individual business under the name Strobel Products Co. was taken over and continued by the Strobel Products Company, Incorporated"). After 1922, there is a period of twenty-eight years when there is no evidence of the use of the Gustav Stickley mark as a trademark by petitioner or anyone else. Section 45 of the Trademark Act, 15 U.S.C. § 1127, provides that a mark is abandoned when "its use has been discontinued with intent not to resume use… Nonuse for three consecutive years shall be prima facie evidence of abandonment." Because of this long period of non-use, we do not need to determine whether Gustav Stickley's trademark rights in the mark THE CRAFTSMAN ALS IK KAN and woodworker's compass design was acquired by petitioner because any rights it may have acquired were subsequently lost through this extended period of nonuse. We note that the Second Circuit reached a similar conclusion with respect to the issue of whether petitioner abandoned any rights it may have acquired in Gustav Stickley's trade dress:

> Here, the designs of Gustav Stickley were not produced from the early 1920s until 1989. In the parlance of registered trademark cancellation law, L. & J.G. Stickley abandoned its trade dress during this period of time. The over sixty years of non-use of the trade dress, during which time L. & J.G. Stickley manufactured boat hulls and early American reproductions, extinguished any rights L. & J.G. Stickley had in the Gustav Stickley designs. Although L. & J.G. Stickley resumed use of the trade dress in 1989 when it began to "reissue" the Gustav Stickley furniture designs, L. & J.G. Stickley was not entitled

29

> to benefit from any use of the trade dress prior to 1989.

L. & J.G. Stickley Inc. v. Canal Dover Furniture Co., 38 USPQ2d at 1206 (footnote omitted).

As indicated above, a three-year period of non-use establishes a presumption that even a federally registered mark is abandoned.  The board has applied the statutory presumption of abandonment "to a party's unregistered common-law mark."  Miller Brewing Company v. Oland's Breweries [1971] Limited, 548 F.2d 349, 192 USPQ 266, 267 (CCPA 1976).  Here, petitioner's twenty-eight year period of nonuse establishes abandonment.  This period was sufficient to demonstrate that the rights in the marks were long since abandoned and, therefore, petitioner is not entitled to rely on this early use of the mark.  Further, petitioner has not provided an excuse for this long period of nonuse.  "To prove excusable nonuse, the registrant must produce evidence showing that, under his particular circumstances, his activities are those that a reasonable businessman, who had a bona fide intent to use the mark in United States commerce, would have undertaken."  Rivard v. Linville, 133 F.3d 1446, 45 USPQ2d 1374, 1376 (Fed. Cir. 1998). Petitioner's nebulous statement that it was holding the mark "in esteem" is not sufficient to demonstrate that it had a bona fide intent to use the mark in commerce.

It is also clear that petitioner itself did not actually use the mark THE CRAFTSMAN, ALS IK KAN, or the woodworker's compass on furniture or furniture polish prior to 1978. Therefore, inasmuch as petitioner did not use the mark as a trademark on its furniture or furniture polish before 1978, we must consider whether there is another theory by which petitioner may have priority.

Petitioner argues that at "the very least, Stickley's prior use of the marks constitutes analogous trademark use sufficient to warrant cancellation of Respondent's registrations." Brief at 37. There is evidence that petitioner had a display that included marks that used the words ALS IK KAN and the woodworker's compass in its showroom for many years prior to 1978. In addition, its 1977 catalog prominently used the term ALS IK KAN and identified it as one of Stickley's trademarks.

The question then becomes whether these uses amount to trade name use or use analogous to trademark use. Certainly, "a trade name lacking any independent trademark or service mark significance may bar registration of a trademark or service mark that is confusingly similar to that trade name." Martahus, 27 USPQ2d at 1850.[14] Furthermore, it "is well settled that one may ground one's

_____

[14] Id. ("A 'trade name' is any name used by a person to identify his or her business or vocation").

opposition to an application on the prior use of a term in a manner analogous to service mark or trademark use."

T.A.B. Systems v. PacTel Teletrac, 77 F.3d 1372, 37 USPQ2d 1879, 1991 (Fed. Cir. 1996).

> The cases on analogous use have not required that the opposer proffer survey evidence or other direct evidence of the consuming public's identification of the target word or phrase with the opposer as the source of a given product or service. Instead, the fact finder may infer the fact of identification on the basis of indirect evidence regarding the opposer's use of the word or phrase in advertising brochures, catalogs, newspaper ads, and articles in newspapers and trade publications.

T.A.B. Systems, 37 USPQ2d at 1881.

The evidence concerning analogous use includes petitioner's use of the mark on a display in its showroom and its use of the phrase ALS IK KAN in its 1977 catalog. The following mark appeared in its showroom display:



along with three other marks under the caption "The Pride of Craftsmanship." While the actual display was not available, petitioner's principal described the display as follows: "Well, there was a framed copy of the back page of this book showing the four brands, the Stickley of Fayetteville, the paper label, the Leopold Stickley original, the hand clamp showing Stickley of Fayetteville, and the Gustav mark Als ik

kan, which is the joiner's compass with the Als ik kan in the center." Audi dep. at 69. Mr. Cathers, petitioner's historian, and Mr. Noreault, respondent's partner, all were aware of the display. As indicated, the display was in petitioner's showroom. Before the 1980's, there was only one Stickley showroom. Audi dep. at 71. Therefore, the mark would have been visible to all the consumers seeking to buy petitioner's furniture and furniture polish who visited petitioner's only showroom in the 1970's. The CCPA "has recognized that a party may rely upon advertising and promotional use of a term or expression to defeat a right of registration asserted by another who has made subsequent trademark use of that term or expression on the same or similar goods." Miller Brewing v. Oland's Breweries, 192 USPQ at 268 n.7. The public upon seeing the mark would have understood that the term ALS IK KAN and the woodworker's compass were associated with petitioner.

By 1977, petitioner's catalog included the term ALS IK KAN prominently identified as one of its trademarks. Similar uses of the phrase ALS IK KAN also appeared in the 1980 and 1983 catalogs. Stipulated Exhibits 13 and 14. The catalogs show petitioner's prominent use of the phrase ALS IK KAN in a manner that associates the term with petitioner's furniture and furniture polish. This use

33

reinforces the association that members of the public would have drawn between petitioner and the phrase ALS IK KAN.

Thus, we find that petitioner has established by a preponderance of the evidence that it made use analogous to trademark use of the phrase ALS IK KAN and the woodworker's compass in association with its furniture and furniture polish and that this use was established at least by the end of 1977 when its 1977 catalog was issued.[15] To the extent that respondent is alleging that petitioner has abandoned its mark "even after the date that Registrant adopted and used the present mark" (Brief at 22), it has the burden of coming forward with evidence of abandonment. West Florida Seafood, 31 USPQ 2d at 1666. Respondent relies on the testimony of petitioner's witness, Mr. Audi, who was asked: "Is it currently your intention to put the compass with Als ik kan on furniture?" The witness responded "No." Audi

---

[15] Even an intent-to-use applicant may tack on analogous use to its application. Dyneer Corp. v. Automotive Products plc, 37 USPQ2d 1251, 1256-57 (TTAB 1995) ("We note that our modified test contemplates the 'tacking' of applicant's use analogous to trademark use, and any continuing association of the mark with applicant and its goods which may be shown to have resulted therefrom, onto the constructive use date which applicant would obtain through issuance of a registration for its mark. While this is an issue of first impression for the Board, we believe that an intent-to-use applicant, with a bona fide intent to make use of the applied for mark in commerce, should be permitted to engage in such tacking, if circumstances show that the party has had a continuing intent to cultivate an association of the mark with itself and its goods or services and that such an association was created").

dep. at 164.[16]  However, we note that we have found priority not as a result of petitioner's use of the mark as a trademark for goods but rather as a result of petitioner's use analogous to trademark use or trade name type use.  We cannot say that there has been any abandonment of this type of use.  See, e.g., Stipulated Evid., Exhibits 15 (1987 catalog), 16 (1991 catalog) and 18 (1995 newspaper article).

We have earlier determined that respondent has established dates of priority as of the end of 1978 for furniture polish and its constructive use date of June 11, 1997 for furniture.  Therefore, inasmuch as petitioner has a priority date as of the end of 1977 for its analogous use in association with furniture and furniture polish, it has priority in this case.

Although we have found that petitioner has priority, which is the first requirement for the ground of likelihood of confusion, before we go on to the second prong of this ground, the issue of likelihood of confusion, we will address other grounds that relate to respondent's use of his mark, namely, the grounds of fraud and abandonment.

### Respondent's Use of His Mark on Furniture

Petitioner alleges that respondent has not used his mark on furniture on the date alleged in the application

---

[16] Interestingly, on the errata sheet, the "No" response was changed to "Not at the present time however, the joiners compass is half of our current co-joined mark."  Audi dep., errata sheet.

(Brief at 31) and that, even if he had, the registration should be cancelled because he has not used the mark in commerce for a period of three years (Brief at 49).[17] Registration No. 2,182,183 for furniture was based on an application that was filed on June 11, 1997. Therefore, the question is whether respondent has shown that he has used his mark in commerce on the goods identified in the application prior to this date because, if he did not, the registration must be cancelled regardless of whether there was fraud or mistake. We note that most of respondent's evidence of his use of the THE CRAFTSMAN, ALS IK KAN and woodworker's compass involves trade name use or service mark use.[18] Respondent has shown evidence that he was providing furniture repair, refinishing, and even custom furniture

---

[17] Petitioner also alleges that respondent's registrations should be cancelled because of respondent's fraudulent conduct by providing "false information in his applications before the Trademark Office when he executed false sworn statements that he was entitled to dates of use in commerce of May 1978 for furniture polish and of January 1982 for furniture." Brief at 3. We point out that inaccurate information regarding claimed dates of first use does not, by itself, constitute fraud. Western Worldwide Enterprises Group Inc. v. Qinqdao Brewery, 17 USPQ2d 1137, 1141 (TTAB 1990) ("The Board repeatedly has held that the fact that a party has set forth an erroneous date of first use does not constitute fraud unless, inter alia, there was no valid use of the mark until after the filing of the [Section 1(a)] application").
[18] While this type of evidence is sufficient to establish prior rights for an opposer or petitioner, the registrant or applicant who has based its application on use must show, if challenged, that it used the mark at least as early as the filing date for the goods or services in the application in order to be entitled to registration. See e.g., Martahus, 27 USPQ2d at 1850 ("A trade name which also has significance as either a trademark or a service mark may be registered, whereas a trade name lacking any such significance may not").

building services, but we cannot conclude that he has shown that he has used the mark THE CRAFTSMAN, ALS IK KAN, and woodworker's compass on the goods in the registration, i.e., furniture, prior to the filing date of the application. The advertisement below is an example (colors reversed to show the image better) of respondent's use. Cosser dep. Ex. C3.



While this New York Times advertisement may have been in use before the filing date (although the evidence is far from clear), it again appears to show service mark or trade name use. Cosser dep. at 75 (Respondent indicated that he advertised in the New York Times in the "Mid-90's, late '90s. The '90s").[19] See also Cosser dep. Ex. A (New York State service mark application for furniture refinishing and upholstering services). Thus, based on the record before us, we find that respondent used his mark on wood furniture polish prior to the filing date of his application for those goods. In addition, there is evidence that respondent was using the mark as a service mark and a trade name. However,

37

the evidence does not permit us to conclude that respondent actually used the mark on furniture prior to the filing date of his application for such goods. Mr. Dill, respondent's customer, testified that he purchased both custom-made and pre-made furniture. Despite buying numerous pieces of furniture, Mr. Dill testified that the mark at issue was not on the furniture, nor could he say that the mark was included with the furniture.[20] Respondent has not submitted any evidence of the use of his mark on furniture. Respondent further admitted that when asked if his furniture is "known to the public as Als ik Kan furniture," he replied "Not that I'm aware of." Cosser dep. at 115. Respondent's testimony on his use of the mark on furniture does not persuade us that he actually used the mark on furniture by June 11, 1997.[21]

---

[19] Subsequent testimony suggests that this ad was likely from 2000. See Cosser dep. at 136-137.

[20] We add that even if a business card was occasionally included with the final product, the "use of a term on order forms or invoices or package inserts or leaflets or brochures or other advertising material such as information sheets does not constitute use thereof as a trademark." In re Bright of America, Inc., 205 USPQ 63, 71 (TTAB 1979)

[21] While we conclude that respondent had not used his mark on furniture as of the application's filing date, we do not find that this was as a result of fraud. Fraud "must be proved to the hilt." Carefirst of Maryland Inc. v. FirstHealth of the Carolinas Inc., 77 USPQ2d 1492, 1502 n.11 (TTAB 2005). Inasmuch as respondent was making and selling furniture and using the mark in association with furniture-related services, this is not a case where we would conclude that respondent disregarded the significance of trademark law. See, e.g., Standard Knitting Ltd. v. Toyota Jidosha Kabushiki Kaisha, 77 USPQ2d 1917, 1927 (TTAB 2006) (In this case, the declarant "could not have honestly believed that 'use' simply meant that the goods were 'made.' This is not a situation where opposer misunderstood the

We conclude that respondent's Registration No. 2,182,183 for furniture should be cancelled because the mark was not used in commerce prior to the filing date of the application.

### Likelihood of Confusion

The next issue in this case concerns whether there is a likelihood of confusion. See Section 2(d) of the Trademark Act, 15 U.S.C. § 1052(d). The Federal Circuit and its predecessor, the Court of Customs and Patent Appeals, has set out the factors we consider we consider in likelihood of confusion cases. In re Majestic Distilling Co., 315 F.3d 1311, 65 USPQ2d 1201, 1203 (Fed. Cir. 2003). See also In re E. I. du Pont de Nemours & Co., 476 F.2d 1357, 177 USPQ 563, 567 (CCPA 1973); and Recot, Inc. v. Becton, 214 F.3d 1322, 54 USPQ2d 1894, 1896 (Fed. Cir. 2000).

The first factor "requires examination of 'the similarity or dissimilarity of the marks in their entireties as to appearance, sound, connotation and commercial impression.'" Palm Bay Imports Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772, 396 F.3d 1369, 73 USPQ2d 1689, 1691 (Fed. Cir. 2005) (quoting In re E. I. du Pont de

---

significance of the statements it signed. Rather, opposer disregarded the significance"). Instead, this error appears to be a mistake that resulted from respondent's unfamiliarity with the intricacies of trademark law regarding the differences

Nemours & Co., 476 F.2d 1357, 177 USPQ 563, 567 (CCPA 1973)).

Respondent's mark is for the words THE CRAFTSMAN, ALS IK KAN and a woodworker's compass design. Petitioner argues that it "continues to use the marks [THE CRAFTSMAN, ALS IK KAN, and woodworker's compass] either alone or in combination, in connection with furniture and furniture-related goods and services." Brief at 2. For purposes of our determination, we focus our discussion on petitioner's use of the expression ALS IK KAN in association with furniture and furniture polish. Therefore, we must determine whether there is confusion as a result of respondent's use of the identical expression ALS IK KAN including the use the expression with a woodworker's compass as part of his mark with the additional words, "The Craftsman." We must consider the marks in their entireties. However, the Federal Circuit has noted that "there is nothing improper in stating that, for rational reasons, more or less weight has been given to a particular feature of a mark, provided the ultimate conclusion rests on consideration of the marks in their entireties. Indeed, this type of analysis appears to be unavoidable." In re National Data Corp., 753 F.2d 1056, 224 USPQ 749, 751 (Fed. Cir. 1985). When we look at the marks, we do find that the

---

between a service mark for custom furniture making services and a

40

term "The Craftsman" has a highly suggestive connotation when applied to furniture and furniture polish, particularly when the evidence shows that these products are associated with the work of craftsmen. Respondent considers himself a craftsman. Cosser dep. at 97. See also Cosser dep. Ex. P (001513) ("If you want your furniture to be in the hands of experienced craftsmen, then call us for a free estimate") and (001509) (The Craftsman Furniture Polish – "Made by furniture makers, by hand, in small batches and put up in pint tin cans"). Furthermore, as indicated earlier, the actual furniture involved in this case is Mission furniture, which was a type of furniture that was part of the Arts and Crafts movement. This movement "rejected machine manufacturing and sought a return to craftsmanship, developed at the turn of the century in response to the Industrial Revolution." L. & J.G. Stickley Inc. v. Canal Dover Furniture Co., 38 USPQ2d at 1203. Therefore, the term "The Craftsman" would be highly suggestive of furniture and furniture polish made by craftsmen.

The expression ALS IK KAN would likely have more trademark significance to prospective purchasers than the term THE CRAFTSMAN. It is variously translated but, as the registration indicates, it roughly means "If I can, all I can." This motto, while perhaps having a slightly laudatory

trademark for furniture.

41

meaning, would be more significant in distinguishing goods that may be produced by various craftsmen.  We find that this unusual Finnish or Flemish expression ALS IK KAN and its English translation would dominate respondent's mark and it is the only or dominant part of petitioner's term used in its showroom and catalog.  Therefore, we conclude that the marks are very similar.  We add that while respondent uses the woodworker's compass, petitioner has also used the woodworker's compass before respondent, and thus the presence of this feature in both respondent's and petitioner's marks would increase the likelihood of confusion.

Regarding the goods, we note that both respondent and petitioner use the same term on or in association with furniture polish.  "When marks would appear on virtually identical goods or services, the degree of similarity necessary to support a conclusion of likely confusion declines."  Century 21 Real Estate Corp. v. Century Life of America, 970 F.2d 874, 23 USPQ2d 1698, 1701 (Fed. Cir. 1992).  We add that petitioner also uses the mark in association with furniture and respondent also has a registration for furniture, therefore, these goods would likewise be legally identical.

Because the goods of both parties are at least overlapping, we must presume that the purchasers and

channels of trade would at least overlap.  In re Smith and Mehaffey, 31 USPQ2d 1531, 1532 (TTAB 1994) ("Because the goods are legally identical, they must be presumed to travel in the same channels of trade, and be sold to the same class of purchasers").  See also In re Elbaum, 211 USPQ 639, 640 (TTAB 1981) ("Where the services in the application at issue and/or in the cited registration are broadly identified as to their nature and type, such that there is an absence of any restrictions as to the channels of trade and no limitation as to the classes of purchasers, it is presumed that in scope the recitation of services encompasses not only all the services of the nature and type described therein, but that the identified services are offered in all channels of trade which would be normal therefor, and that they would be purchased by all potential buyers thereof").

In this case, when we consider all the likelihood of confusion factors, we conclude that confusion is likely.

### False Suggestion

Finally, we note that petitioner argues that "Respondent's mark falsely suggests a connection with Gustav Stickley" under Section 2(a) of the Trademark Act.  Brief at 46.  To prevail under Section 2(a),

> [I]t must be demonstrated:  (1) that the marks are the same as, or a close approximation of, the name or identity previously used by the other person; (2) that the marks would be recognized as such, in that they point uniquely and unmistakably to that person; (3) that the person named by the marks is not connected

43

with the activities performed by applicant under the marks; and (4) that the prior user's name or identity is of sufficient fame or reputation that a connection with such person would be presumed when applicant's marks are used on applicant's goods.

In re Wielinski, 49 USPQ2d 1754, 1757 (TTAB 1998). See also In re White, 80 USPQ2d 1654, 1658 (TTAB 2006).

In this case, petitioner has not met its burden of showing that there is a false suggestion of a connection between respondent's mark and its term. The trademarks of Gustav Stickley have experienced a long period of nonuse. During this period of nonuse, it is certainly not clear that the use of the ALS IK KAN and the woodworker's compass somehow pointed uniquely to petitioner. Indeed, petitioner's own witness testified that "in 1973, almost nothing was known about Stickley furniture." Cathers dep. at 10. As discussed previously, the evidence of petitioner's more contemporary use is not very extensive and it does not indicate that ALS IK KAN and the woodworker's compass points uniquely to petitioner. Therefore, we conclude that petitioner has not shown that it is entitled to prevail on the 2(a) basis.

Decision: The petition to cancel Registration Nos. 2,028,089 and 2,182,183 is granted.

44