Carl M. MARTAHUS, d/b/a Video Cassette Duplication Services, Appellant,

v.

VIDEO DUPLICATION SERVICES, INC., Appellee.

No. 93–1007.

United States Court of Appeals, Federal Circuit.

Aug. 17, 1993.

James B. Niehaus, Thompson, Hine and Flory, Cleveland, OH, argued, for appellant. With him on the brief was Suzanne E. Bretz.

Robert G. Schuler, Emens, Kegler, Brown, Hill & Ritter, A Legal Professional Ass'n, Columbus, OH, argued, for appellee. John L. Gray, Emens, Kegler, Brown, Hill & Ritter, A Legal Professional Ass'n, Columbus, OH, was on the brief.

Before RICH, LOURIE, and CLEVENGER, Circuit Judges.

RICH, Circuit Judge.

Marcorp, Inc. and Carl M. Martahus d/b/a Video Cassette Duplication Services (collectively VCDS) appeal the July 14, 1992 decision of the Trademark Trial and Appeal Board (TTAB) of the United States Patent and Trademark Office (PTO), *Video Duplication Servs., Inc. v. Carl M. Martahus,* Cancellation No. 18,991 (TTAB July 14, 1992), granting a petition by Video Duplication Services, Inc. (VDS) to cancel Registration No. 1,432,783 owned by VCDS,[1] as it relates to the services set forth in International Class

---

1. The PTO issued the registration to Martahus d/b/a Video Duplication Services, who subsequently recorded an assignment transferring ownership of the registration to Marcorp. Marcorp was added as a party defendant.

40, i.e., the duplication of video cassette tapes and the transferring of video cassette tapes from one format into another,[2] and denying a cross-petition by VCDS to cancel Registration No. 1,641,580 owned by VDS for the same services. We affirm.

## I. BACKGROUND

Peter Stock, the current president of VDS, founded VDS in January of 1985 [3] to provide various video duplication services, and VDS made its first documented sale of such services in March of that year. VCDS, which is also in the video duplication business, opened its first office in May of 1985. The earliest-dated invoice of record evidencing a sale of services by VCDS bears an August 7, 1985 date.

VCDS applied for federal registration of the mark "VCDS" on June 20, 1986 (Application Serial No. 73/605,496) for the services of duplicating video cassette tapes and transferring video cassette tapes from one format into another, and the PTO issued Registration No. 1,432,783 for this mark on March 17, 1987. Approximately three years later, in April of 1990, VCDS wrote a letter to VDS demanding that VDS discontinue using the mark "VDS" in its business, arguing that VCDS had superior rights in the similar mark "VCDS." Shortly thereafter, on May 8, 1990, VDS applied for federal registration of the mark "VDS" (Application Serial No. 74/059731), also for the services of duplicating video cassette tapes and transferring video cassette tapes from one format into another.

On May 22, 1990, VCDS again demanded that VDS discontinue using the mark "VDS," this time threatening to pursue legal action against VDS. In response, VDS filed a petition with the PTO on June 4, 1990 to cancel VCDS's registration. On April 16, 1991, during the course of the cancellation proceeding that followed, the PTO issued Registration No. 1,641,580 to VDS for the mark "VDS." VCDS then filed with the PTO a cross-petition for cancellation of VDS's registration.

In its July 20, 1992 decision, the TTAB found, as a factual matter, that VDS had used "VDS," at least as a trade name, prior to VCDS's first service mark use of "VCDS," and accordingly granted VDS's petition. The TTAB also dismissed VCDS's cross-petition since VCDS had failed to establish that it used "VCDS" prior to VDS's first service mark use of "VDS." VCDS asks this court to reverse the TTAB's cancellation of VCDS's registration and order the PTO to cancel VDS's corresponding registration.

## II. ANALYSIS

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1295(a)(4)(B) (1988).

### A. *Standing*

VCDS argues that the TTAB erred in not dismissing VDS's cancellation petition for lack of standing. VCDS contends that VDS took the position in both its main brief and its reply brief before the TTAB that the marks "VDS" and "VCDS" are not confusingly similar, and consequently, by taking this position, VDS lost standing to pursue cancellation of VCDS's registration. We are not persuaded that the TTAB committed any error.

At the outset, we note that VCDS sets forth several arguments to this court regarding certain positions that VDS allegedly adopted in its briefs before the TTAB, yet VCDS has not provided this court with copies of these briefs, or even the relevant portions thereof, to support these allegations. Simi-

---

**2.** The TTAB stated at page 1, footnote 1, of its decision that

[a]lthough [VDS] did not specifically state that its cancellation petition is directed only to the services in Class 40, [VDS] submitted a fee of $200, which is a fee for filing a petition for cancellation as to a single class, and its pleadings make it clear that its claims relate only to the services set forth in [VCDS's] registration. Neither party has contested the TTAB's holding in this regard, and therefore we accept for pur-

poses of this opinion the TTAB's characterization of the present dispute as being limited to determining whether VDS or VCDS is entitled to its respective registration for the services of duplicating video cassette tapes and transferring video cassette tapes from one format into another.

**3.** Stock registered the name of his company, Video Duplication Services, with the Ohio Secretary of State's office on January 23, 1985.

larly, VCDS claims that VDS took the position in its registration application that the marks "VDS" and "VCDS" are not confusingly similar, yet VCDS also has not provided this court with a copy, or even the relevant portions, of that application. Clearly, without having before us the documentation to which VCDS refers, we cannot adequately assess the accuracy or legitimacy of VCDS's allegations; mere attorney arguments unsubstantiated by record evidence are suspect at best. Consequently, we accept as accurate the TTAB's characterization of the record below. In particular, we accept as accurate the following found at pages 6–7 of the TTAB's opinion:

> The allegations and admissions of the parties in their pleadings show that they are not contesting that the parties' services are offered in the same channels of trade, and that the marks are confusingly similar. In addition, the parties have both alleged that their services are identical. [VDS] has also alleged that [VCDS's] mark, as applied to its services, is likely to cause confusion with respect to [VDS's] mark, and [VCDS] has alleged that [VDS's] mark, as applied to its services, is likely to cause confusion with respect to [VCDS's] mark.

■ Although the TTAB also acknowledged that VDS did set forth certain arguments in its reply brief to the TTAB which could be considered inconsistent with VDS's initial petition,[4] the TTAB held that it could not interpret these arguments as representing an unequivocal change of position with respect to the issue of likelihood of confusion, and thus, that it would not read them as constituting a withdrawal of VDS's petition. The TTAB went on to state at pages 7–8 of its opinion:

> Accordingly, in view of [VDS's] registration for VDS and its priority of use; [VDS's] pleading of likelihood of confusion

in its amended petition; the admissions of [VCDS] that the marks are confusingly similar and the services are offered in the same channels of trade; and [VCDS's] allegation that the parties' services are identical, which allegation is supported by the evidence of record; [VDS's] petition to cancel [VCDS's] registration in Class 40 is granted.

We see no error in the TTAB's reasoning, and VCDS has failed to present us with any evidence that the TTAB's holding is contrary to the record developed below. Furthermore, given the facts of this case, the TTAB's conclusion that it could not read VDS's allegedly inconsistent comments as a withdrawal of VDS's cancellation petition seems highly appropriate. It is axiomatic that, if a likelihood of confusion exists between the two marks at issue, as VCDS has maintained since it first demanded that VDS discontinue use of the "VDS" mark, then VCDS's registration should be cancelled if the facts establish that VDS used "VDS" as a trade name or a service mark prior to VCDS's first use of "VCDS" as a service mark. In essence, VCDS put its own registration at risk when it filed a petition to cancel VDS's registration arguing likelihood of confusion. Moreover, VDS's allegedly inconsistent comments, when read as a whole and in context with all of the activities preceding VDS's submittal of its reply brief to the TTAB, suggest little more than an admission that, although VDS was not certain that a likelihood of confusion existed, VDS nonetheless believed that it was entitled to priority if such a likelihood was found.

For the foregoing reasons, we cannot say that the TTAB erred as a matter of law in holding that VDS has standing to pursue cancellation of VCDS's registration.

---

4. The TTAB noted at page 7 of its opinion that VDS stated the following at page 11 of its reply brief:

> Because there is a presumption in the law that two marks registered for similar services are not confusingly similar, [VDS] now contends that there is no likelihood of confusion. [VDS], a multi-million dollar business values its VDS mark much more than it perceives any

threat from [VCDS]—a company less than one-third the size of [VDS]. To the extent the [TTAB] finds there is no likelihood of confusion, [VDS] would accept such finding. However, to the extent there is any likelihood of confusion, the [TTAB] must cancel [VCDS's] mark because [VDS's] VDS mark has an earlier date of use.

## B. *The Board's Priority Decision*

■ Registration of service marks is provided for by 15 U.S.C. § 1053 (1988). Registration is barred, however, if a service mark consists of or comprises a mark which so resembles a mark or trade name previously used in the United States by another, and not abandoned, as to be likely, when used in connection with the services of the applicant, to cause confusion, to cause mistake, or to deceive. *See* 15 U.S.C. § 1052(d) (1988). Pursuant to 15 U.S.C. § 1064 (1988), a party may seek cancellation of an issued registration on the basis of such prior use. Although this court has not previously addressed either the burden or standard of proof in cancellation proceedings for service mark registrations, we discern no reason to differentiate them from trademark and certification mark registration cancellations. *See Midwest Plastic Fabricators, Inc. v. Underwriters Labs., Inc.,* 906 F.2d 1568, 1570–71, 15 USPQ2d 1359, 1361 (Fed.Cir.1990); *Cerveceria Centroamericana, S.A. v. Cerveceria India, Inc.,* 892 F.2d 1021, 1023, 13 USPQ2d 1307, 1309 (Fed.Cir.1989). Thus, since service mark registrations are presumed valid, one seeking cancellation of such a registration must rebut this presumption by a preponderance of the evidence as in any other cancellation proceeding. *See Cerveceria Centroamericana,* 892 F.2d at 1023, 13 USPQ2d at 1309; *Dan Robbins & Assocs., Inc. v. Questor Corp.,* 599 F.2d 1009, 1014, 202 USPQ 100, 105 (CCPA 1979); 15 U.S.C. § 1057(b).

### (1) *Trade Name/Service Mark Distinction*

The TTAB found that both parties admitted that there is a likelihood of confusion between their marks and that these marks are registered for identical services offered in the same channels of trade. Neither party contests this aspect of the TTAB's decision, and therefore we limit our review of the TTAB's decision to whether the TTAB's determinations regarding priority of use as to the respective marks were in error. We review any factual findings underlying a priority determination for clear error. *Weiss Assocs., Inc. v. HRL Assocs., Inc.,* 902 F.2d 1546, 1548, 14 USPQ2d 1840, 1841 (Fed.Cir.

1990); *Stock Pot Restaurant, Inc. v. Stockpot, Inc.,* 737 F.2d 1576, 1578, 222 USPQ 665, 666 (Fed.Cir.1984).

As an initial matter, we note VCDS's allegations in its reply brief and at oral argument that the TTAB merely held that VDS had used "VDS" as a trade name during the relevant time period and that VDS has mischaracterized the TTAB's decision as holding that "VDS" attained service mark status. VCDS implies that, because all of VDS's arguments to this court are directed to whether VDS used "VDS" as a service mark, we should disregard them as irrelevant. We are puzzled by VCDS's position in this regard, given that VCDS's arguments throughout its main brief to this court concentrated entirely on whether "VDS" was used as a service mark during the relevant time period; VCDS did not set forth any arguments in its main brief as to whether "VDS" possessed any trade name significance during that period. Furthermore, a review of the TTAB's decision as a whole evidences that the TTAB's ultimate holding rested on VDS's rights in "VDS" as both a trade name and a service mark.

■ A "trade name" is any name used by a person to identify his or her business or vocation, and a "service mark" is any word, name, symbol, or device, or any combination thereof, used to identify and distinguish services from those of others and to indicate the source of those services. *National Cable Television Ass'n, Inc. v. American Cinema Editors, Inc.,* 937 F.2d 1572, 1576, 19 USPQ2d 1424, 1427–28 (Fed.Cir.1991); 15 U.S.C. § 1127 (definitions of "trade name" and "service mark"); *see also* 1 J. Thomas McCarthy, *Trademarks and Unfair Competition* § 4.04 (3d ed. 1992). A trade name which also has significance as either a trademark or a service mark may be registered, whereas a trade name lacking any such significance may not. Nevertheless, a trade name lacking any independent trademark or service mark significance may bar registration of a trademark or service mark that is confusingly similar to that trade name. *See Malcolm Nicol & Co. v. Witco Corp.,* 881 F.2d 1063, 1065, 11 USPQ2d 1638, 1639 (Fed. Cir.1989); *Alfred Elecs. v. Alford Mfg. Co.,*

333 F.2d 912, 918, 142 USPQ 168, 172 (CCPA 1964); *Cyber–Tronics, Inc. v. Johnson Serv. Co.*, 156 USPQ 583, 586 (TTAB 1967); *Hotel Corp. of Am. v. Inn Am., Inc.*, 153 USPQ 574, 575–76 (TTAB 1967).

■ Therefore, even if we were to agree with VCDS, which we do not, that the TTAB's decision is limited to a holding that VDS had used "VDS" merely as a trade name, such a use alone would be sufficient, if prior, to bar registration of VCDS's mark, thus justifying cancellation of VCDS's registration. VCDS argues nonetheless that "VDS" fails to meet the definition of "trade name" set forth in 15 U.S.C. § 1127. However, to establish trade name identification, an "organization need only to have used a name or acronym in a manner that identifies the company by that name or acronym to the public. ... no particular formality of adoption or display is necessary to establish trade name identification." *National Cable Television*, 937 F.2d at 1577, 19 USPQ2d at 1428. As discussed more fully below, we cannot say that the TTAB clearly erred in finding that VDS's use of "VDS" prior to VCDS's first service mark use of "VCDS" met this standard.

Even so, the TTAB implicitly held, as evidenced by the TTAB's dismissal of VCDS's cancellation petition, that VDS's use of "VDS" from its claimed first use of March 13, 1985 up to March 28, 1985, the earliest date that VCDS can rely upon for use of "VCDS,"[5] rose to the level of service mark use. Moreover, the TTAB acknowledged in its discussion of the record below that the dispute all along has been one of who is entitled to register its respective service mark in connection with video duplication services. Clearly, the TTAB fully intended to decide and did decide this issue.

(2) *The Registrations*

■ To establish that VCDS's registration should be cancelled, VDS had the burden of proving by a preponderance of the evidence that VDS used "VDS" as either a trade name

or a service mark prior to VCDS's first service mark use of "VCDS." The TTAB held that VDS met this burden. In reaching this decision, the TTAB further found that VCDS had failed to meet its countervailing burden as to its cancellation petition to prove use of "VCDS" prior to VDS's first use of "VDS" as a service mark. We agree with both of these determinations.

The TTAB found that VDS had used "VDS" for the sale of video duplication services at least as early as March 13, 1985, which use constituted both trade name and service mark use. The TTAB's decision was based primarily on a multipurpose form that VDS put in evidence, dated March 13, 1985, which indicated that VDS had taken and completed an order for such services on that date. At that time, VDS used multipurpose forms such as the March 13, 1985 form for a variety of business purposes, such as purchase order forms, sales invoices, customer receipts, and shipping invoices. These forms bore the heading "Video Duplication Services" and contained several information blocks to be completed such as "VDS customer code," "VDS job #," "Master due at VDS," and "Master received at VDS." In addition to the March 13, 1985 sales invoice, VDS also put in evidence before the TTAB similar sales invoices bearing dates of March 20 and 27, 1985.

The TTAB also acknowledged Stock's unrebutted deposition testimony that, although he wasn't prepared to make any sales prior to March of 1985, he had informed others that he would be offering video duplication services as soon as equipment arrived. Stock further testified that he used the term "VDS" to refer to his business when talking with potential customers and that, even before the date of VDS's first sale of services, the company was being referred to as "VDS." In addition, the TTAB found that a contract between VDS and Rax Restaurants supported Stock's testimony that the relevant public referred to VDS as "VDS" during the relevant time period. The TTAB rea-

---

5. As discussed in note 7, infra, VCDS's claim to March 28, 1985 as its first use of its "VCDS" mark is questionable. However, as did the TTAB, we are allowing VCDS to rely on this date to illustrate that, even if VCDS were entitled to this date, use as of this date would not predate VDS's first use of "VDS" as a service mark.

soned that, although the contract may not have been executed until May 7, 1985, the parties had negotiated the contract over a one to two month period, and therefore, the use of "VDS" in the contract evidenced that the earlier uses of "VDS" in the sales invoices of record were intended by VDS, and considered by customers, to be at a minimum trade name uses.

As to VCDS, the TTAB found that VCDS's earliest documented sale of services under the "VCDS" mark was August 7, 1985. The TTAB further acknowledged that VCDS had admitted that it did not provide any video duplication services prior to May 1, 1985, which apparently is in harmony with VCDS's date of first use claimed in its registration application.[6] Finally, the TTAB noted Martahus's deposition testimony that VCDS had installed a sign bearing the "VCDS" initials at its office prior to its first sale of services; the TTAB found, however, that, even if this had constituted trade name or service mark use, it could not have taken place prior to March 28, 1985 when VCDS signed the lease for the office.[7] VCDS has not contested any of these factual findings.

In view of the foregoing, the TTAB found, as a fact, that VDS used "VDS" at least as a trade name prior to March 28, 1985, the earliest date that VCDS can rely upon for first use, and accordingly granted VDS's petition to cancel VCDS's registration. The TTAB also denied VCDS's cross-petition to

cancel VDS's registration, thus implicitly holding that VDS's use of "VDS" prior to March 28, 1985 also rose to the level of service mark use. We see no error in the TTAB's decision.

VCDS argues, without any evidence in support thereof, that VDS's use of the initials "VDS" in its March, 1985 sales invoices was nothing more than a space saving abbreviation of the company's name not meriting a finding of trade name or service mark use. VCDS suggests that VDS's use of its full name "Video Duplication Services" at the top of the sales invoices illustrates that VDS did not intend that "VDS" used internally in the invoices represent anything more than a simple abbreviation. VCDS similarly asserts that, if "VDS" was being used as a trade name or a service mark during the negotiation and execution of the Rax contract, there would have been no need to identify "Video Duplication Services" as a party to that contract. In addition, VCDS also argues that all of the other evidence relied upon by VDS is merely self-serving testimony of VDS's president which should not be given any weight. We find each of these arguments unpersuasive.

■ An acronym or abbreviation made up of the first letters of the words in the name of a business may have trade name or service mark significance. *See National Cable Television*, 937 F.2d 1572, 19 USPQ2d 1424.[8] In

---

**6.** The parties have not provided this court with copies of their registrations or of the applications which led to these registrations, and therefore we cannot verify the date of first use claimed in each application. Thus, we accept as accurate VDS's unrebutted allegation in its cancellation petition that VCDS's date of first use claimed in its application was May of 1985.

**7.** VCDS alleges use prior to the date that it apparently listed in its registration application as its date of first use, i.e., prior to May of 1985, and therefore VCDS has the burden of establishing that use by clear and convincing evidence instead of mere preponderance of the evidence. *See Hydro–Dynamics, Inc. v. George Putnam & Co., Inc.*, 811 F.2d 1470, 1473, 1 USPQ2d 1772, 1773–74 (Fed.Cir.1987); *Elder Mfg. Co. v. International Shoe Co.*, 194 F.2d 114, 118, 92 USPQ 330, 332 (CCPA 1952). VCDS has not provided in the record before us clear and convincing evidence that VCDS installed a sign bearing the

"VCDS" mark at its office prior to May 1, 1985, or that such an installation would have amounted to service mark use. Thus, we believe that VCDS should be limited to relying on the first use date claimed in its application. Nevertheless, as noted by the TTAB, the result is the same even if VCDS is allowed to rely on the date that it first gained possession of its office.

**8.** *See also Professional Golfer's Ass'n. of Am. v. Bankers Life & Casualty Co.*, 514 F.2d 665, 186 USPQ 447 (5th Cir.1975); *Electronic Data Sys. Corp. v. EDSA Micro Corp.*, 23 USPQ2d 1460 (TTAB 1992); *Hewlett–Packard Co. v. Human Performance Measurement, Inc.*, 23 USPQ2d 1390 (TTAB 1991); *Saks & Co. v. Snack Food Ass'n.*, 12 USPQ2d 1833 (TTAB 1989); *United States Navy v. United States Mfg. Co.*, 2 USPQ2d 1254 (TTAB 1987); *Encyclopaedia Britannica, Inc. v. Cowles Educ. Books, Inc.*, 155 USPQ 737 (TTAB 1967); McCarthy, § 7.04, and cases cited therein.

this case, VCDS has failed to provide us with any persuasive evidence supporting its arguments that "VDS" was simply a space saving abbreviation which did not attain trade name or service mark status as found by the TTAB. In addition, as discussed previously, no particular formality of adoption or display is necessary to establish trade name identification. Thus, the TTAB's finding that VDS's use of the acronym "VDS" at four different places in its sales invoices represented trade name use seems quite reasonable, given that such use openly identified the company by that name to its customers and given Stock's unrebutted testimony that his customers did indeed refer to his company as "VDS."[9] Moreover, we also see no error in the TTAB's conclusion that such use represented service mark use, given that VDS's use of "VDS" in its invoices was inherently a use of this mark in association with a sale of its services. *See Sealy, Inc. v. Simmons Co.,* 265 F.2d 934, 937, 121 USPQ 456, 459 (CCPA 1959) (use of mark in sales invoices considered probative evidence of priority of use of trademark); *In re Republic of Austria Spanische Reitschule,* 197 USPQ 494, 498 (TTAB 1977) ("A service mark application must reflect use of the mark 'in the sale or advertising of services' ... and may include advertisings, brochures, *invoices,* and virtually every form of printed matter.") (emphasis added); *Penta Hotels Ltd. v. Penta Tours,* 9 USPQ2d 1081, 1988 WL 384940 (D.Conn.1988).

Finally, the fact that VDS elected to use its full name at the top of its sales invoices and in the Rax contract does not, by itself, suggest that VDS did not intend, or that the public did not interpret, VDS's use of "VDS" in the text of these documents to be trade name or service mark use. We also note that Stock's deposition testimony, evidencing that the public referred to VDS as "VDS" has gone unchallenged except for the assertion of general allegations that it is self-serving.

In conclusion, VCDS has not provided us with any basis to hold that the TTAB clearly erred in finding that VDS had used "VDS" as both a trade name and a service mark prior to March 28, 1985. "[W]e cannot simply decide for ourselves whether we would make the same factual determinations as the Board did. On the contrary, we must accept the TTAB's factual findings unless they are clearly wrong." *Stock Pot Restaurant,* 737 F.2d at 1578–79, 222 USPQ at 667. VCDS has failed to convince us that they are.

## CONCLUSION

In view of the foregoing, the decision of the Board is affirmed.

AFFIRMED.

---

**9.** Furthermore, at note 2 of its reply brief VCDS states that, if Stock's testimony is to be believed, the fact that "some customers referred to his company as VDS.... proves nothing more than that customers used VDS as a convenient abbreviation for the company they knew as video duplication services." We note that the public's adoption of "VDS" to refer to Stock's company is

enough to establish trade name and service mark use. *See National Cable Television,* 937 F.2d at 1577, 19 USPQ2d at 1428; *American Stock Exch., Inc. v. American Express Co.,* 207 USPQ 356, 364 (TTAB 1980) ("AMEX" protected); *Norac Co. v. Occidental Petroleum Corp.,* 197 USPQ 306, 315 (TTAB 1977) (earlier use of "OXY" by public determined priority).