This Opinion is a
Precedent of the TTAB

Mailed: March 21, 2016

UNITED STATES PATENT AND TRADEMARK OFFICE

———

Trademark Trial and Appeal Board

———

*In re Highlights for Children, Inc.*

———

Serial No. 85838981

———

Brian J. Downey of Barnes & Thornburg LLP,
    for Highlights for Children, Inc.

Doritt Carroll, Trademark Examining Attorney, Law Office 116,
    Michael W. Baird, Managing Attorney.

———

Before Zervas, Ritchie and Hightower,
    Administrative Trademark Judges.

Opinion by Zervas, Administrative Trademark Judge:

Highlights for Children, Inc. ("Applicant") seeks registration on the Principal Register of the proposed standard character mark IMÁGENES ESCONDIDAS for "books and magazines for children" in International Class 16 based on an application filed on February 1, 2013. Applicant alleges a *bona fide* intention to use the mark in commerce under Section 1(b) of the Trademark Act, 15 U.S.C. § 1051(b), and entered a statement providing that the English translation of the proposed mark is "hidden pictures." In addition, Applicant claims in the alternative acquired distinctiveness of

the mark pursuant to Section 2(f) of the Trademark Act, 15 U.S.C. § 1052(f), and ownership of three registrations, including Registration No. 2873063[1] for the mark HIDDEN PICTURES in typed form[2] for "magazines, puzzlebooks and an ongoing feature in Highlights For Children magazine."[3] Registration No. 2873063, which issued on the Principal Register under Section 2(f), includes a disclaimer of PICTURES and recites June 15, 1946 as the date of first use and first use in commerce.[4]

The Examining Attorney has refused registration of Applicant's mark under Section 2(e)(1) of the Trademark Act, 15 U.S.C. § 1052(e)(1), on the ground that the mark is merely descriptive of a feature of Applicant's identified goods and has not accepted Applicant's claim in the alternative of acquired distinctiveness. After the Examining Attorney issued a final Office Action, Applicant appealed and requested

---

[1] Registered August 17, 2004 (renewed June 9, 2014).

[2] Prior to November 2, 2003, "standard character" drawings were known as "typed" drawings. A typed mark is the legal equivalent of a standard character mark. TRADEMARK MANUAL OF EXAMINING PROCEDURE ("TMEP") § 807.03(i) (October 2015).

[3] Applicant also claims ownership of:

● Registration No. 2847020 on the Supplemental Register for the mark HIDDEN PICTURES for "computer software" with PICTURES disclaimed (registered May 25, 2004, renewed June 9, 2014); and

● Registration No. 2996030 on the Principal Register for the mark HIDDEN PICTURES PLAYGROUND for "magazines, soft cover books, catalogs, newsletters, instructional manuals containing educational and entertaining brainteasers, games, puzzles and stories for children and young adults," with PICTURES disclaimed and a claim of acquired distinctiveness entered for HIDDEN PICTURES (registered September 13, 2005, Section 8 affidavit accepted).

[4] In contrast to Applicant's three existing registrations, each of which includes a disclaimer of PICTURES, the involved application does not include a disclaimer of IMAGENES (the Spanish word for "pictures"), a point we address later in this decision.

reconsideration. The Examining Attorney denied the request for reconsideration, and the Board resumed the appeal.

*Section 2(e)(1) Mere Descriptiveness Refusal*

A term is deemed to be merely descriptive of goods or services, within the meaning of Section 2(e)(1), if it forthwith conveys an immediate idea of an ingredient, quality, characteristic, feature, function, purpose or use of the goods or services. *In re Chamber of Commerce of the U.S.*, 675 F.3d 1297, 102 USPQ2d 1217, 1219 (Fed. Cir. 2012); *see also In re Gyulay*, 820 F.2d 1216, 3 USPQ2d 1009, 1009 (Fed. Cir. 1987); *In re Abcor Development Corp.*, 588 F.2d 811, 200 USPQ 215, 217-18 (CCPA 1978). A term need not immediately convey an idea of each and every specific feature of the applicant's goods or services in order to be considered merely descriptive; it is enough that the term describes one significant attribute, function or property of the goods or services. *In re Chamber of Commerce*, 102 USPQ2d at 1219. It is well-established that the determination of mere descriptiveness must be made not in the abstract, but in relation to the goods or services for which registration is sought. *In re Abcor Development*, 200 USPQ at 218; *In re Vehicle Identification Network, Inc.*, 32 USPQ2d 1542, 1544 (TTAB 1994) (descriptiveness of mark in an intent-to-use application determined by services identified in application).

The Examining Attorney maintains that the wording IMÁGENES ESCONDIDAS is equivalent to the term HIDDEN PICTURES, which is merely descriptive of a feature of Applicant's goods; that the foreign equivalent of a merely descriptive English word is no more registrable than the English word itself, citing TMEP

§ 1209.03(g); and that the doctrine of foreign equivalents applies to Applicant's proposed mark because the ordinary American purchaser with knowledge of Spanish would stop and translate the foreign wording into its English equivalent. The Examining Attorney cites *In re Spirits Int'l, N.V.*, 563 F.3d 1347, 90 USPQ2d 1489, 1492 (Fed. Cir. 2009), to support her contention that for modern languages such as Spanish, "it is presumed that a consumer with knowledge of the language will stop and translate" a term into English.[5]

Although Applicant provided a translation of the proposed mark as meaning "hidden pictures," it nonetheless asserts that the doctrine of foreign equivalents is inapplicable to this case. In the alternative, Applicant contends that if the doctrine is applicable, then it follows that any distinctiveness of its registered HIDDEN PICTURES mark will readily attach to IMAGENES ESCONDIDAS. Each of these arguments is discussed *infra*.

In descriptiveness cases:

> It is a well[-]established principle of trademark law in this country that the foreign equivalent of a merely descriptive English word is no more registrable than the English word itself despite the fact that the foreign term may not be commonly known to the general public. That is, normally no distinction can be made between English terms and their foreign equivalents with respect to registrability.

*In re Optica International*, 196 USPQ 775, 777 (TTAB 1977). "Foreign language words, not adopted into the English language, which are descriptive of a product, are so considered in registration proceedings despite the fact that the words may be

---

[5] Examining Attorney's Brief at unnumbered p. 5, 9 TTABVUE 6.

meaningless to the public generally." *Nestle's Milk Products, Inc. v. Baker Importing Co., Inc.*, 182 F.2d 193, 86 USPQ 80, 82 (CCPA 1950) (citations omitted).

In *Palm Bay Imports, Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772*, 396 F.3d 1369, 73 USPQ2d 1689, 1696 (Fed. Cir. 2005), the Federal Circuit stated:

> Under the doctrine of foreign equivalents, foreign words from common languages are translated into English to determine genericness, descriptiveness, as well as similarity of connotation in order to ascertain confusing similarity with English word marks. *See In re Sarkli, Ltd.*, 721 F.2d 353 (Fed. Cir. 1983); *In re Am. Safety Razor Co.*, 2 USPQ2d 1459, 1460 (TTAB 1987) (finding BUENOS DIAS for soap confusingly similar to GOOD MORNING for shaving cream). When it is unlikely that an American buyer will translate the foreign mark and will take it as it is, then the doctrine of foreign equivalents will not be applied. *In re Tia Maria, Inc.*, 188 USPQ 524 (TTAB 1975) (no likelihood of confusion between TIA MARIA for a Mexican restaurant and AUNT MARY's for canned vegetables).
>
> ***
>
> The doctrine should be applied only when it is likely that the ordinary American purchaser would "stop and translate [the word] into its English equivalent." *In re Pan Tex Hotel Corp.*, 190 USPQ 109, 110 (TTAB 1976).

The "ordinary American purchaser" is not limited to those purchasers who speak only English. "[R]ather, the term includes all American purchasers, including those proficient in a non-English language who would ordinarily be expected to translate words into English." *In re Spirits Int'l*, 90 USPQ2d at 1492.[6]

---

[6] Our consideration of the doctrine of foreign equivalents, therefore, is based on the implicit presumption that the primary language of an ordinary American purchaser is English. *See In re Spirits Int'l*, 90 USPQ2d at 1491 ("In *Palm Bay*, we noted that the doctrine of foreign equivalents applies only in those situations where the ordinary American consumer would stop and translate the mark into English … .").

Spanish is a modern language that is widely spoken in the United States, and Applicant does not dispute this fact.[7] *See also In re La Peregrina Ltd.*, 86 USPQ2d 1645, 1648 (TTAB 2008) ("there is no question that Spanish is a common, modern language"). Applicant, however, argues that consumers would *not* "stop and translate the mark" because the manner in which it will use its proposed mark, described below, obviates the need for translation:

> Applicant will use the mark on bilingual puzzle books that build upon the fame of Applicant's HIDDEN PICTURES books. Attached to the RFR [Request for Reconsideration] as Exhibit A are photos of the IMÁGENES ESCONDIDAS books as currently sold internationally. As can be seen, the IMÁGENES ESCONDIDAS mark always appears with the English HIDDEN PICTURES mark (and the famous HIGHLIGHTS mark).[8]

In short, Applicant argues that an ordinary purchaser will have no need to translate a term that Applicant has already translated for the purchaser, and hence the doctrine of foreign equivalents is inapplicable.

There are two fundamental problems with Applicant's argument. First, its application does not seek to register the English and Spanish terms asserted to be in joint use outside the United States, and we must therefore assume that the applied-for mark may be used without the translation. *See, e.g., Denney v. Elizabeth Arden*

---

[7] The Examining Attorney did *not* introduce evidence to demonstrate that Spanish is widely spoken in the United States. The 2012 U.S. Census Report, however, states that 38.3 million U.S. residents age five and over spoke Spanish at home in 2012. *See* "Language Use in the United States: 2012," accessed at http://www.census.gov/prod/2013pubs/acs-22.pdf. Because the U.S. census is a standard reference, we may, and do, take judicial notice of the information. *See In re Broyhill Furniture Industries Inc.*, 60 USPQ2d 1511, 1514 n.4 (TTAB 2001).

[8] Applicant's Brief at 4, 7 TTABVUE 7.

*Sales Corp.*, 263 F.2d 347, 120 USPQ 480, 481 (CCPA 1959) ("In determining the applicant's right to registration, only the mark as set forth in the application may be considered; whether or not the mark is used with an associated house mark is not controlling."). Second, when foreign words appear next to the English language equivalents, an ordinary purchaser will still recognize the terms as equivalents because of the provided translation. *See In re Aquamar, Inc.*, 115 USPQ2d 1122, 1127 (TTAB 2015) ("When consumers view Applicant's MARAZUL packaging they will see several Spanish words displayed next to their English equivalents, increasing the likelihood that they will translate MARAZUL."). Thus, the policy basis of the doctrine explained by the Federal Circuit in *In re Spirits Int'l* clearly applies whether a translation is *made by* the purchaser or *provided to* the purchaser; the result is the same.

We recognize that there are situations in which the doctrine of foreign equivalents does not apply, for example, when the literal translation of the foreign term would be irrelevant even to ordinary purchasers familiar with the foreign language, or because the term itself is well-known to ordinary purchasers and has become a part of the English language, or the context in which the foreign term is used requires no translation. *See In re Spirits Int'l,* 90 USPQ2d at 1492. These situations do not present themselves in the case before us. Nor does Applicant, which has acknowledged the literal equivalency of HIDDEN PICTURES and IMAGENES ESCONDIDAS, seriously contend that any of these other circumstances apply.

Thus, having concluded that the proposed mark has a definite English translation, and that ordinary consumers familiar with Spanish will stop and translate the proposed mark, we now consider whether IMÁGENES ESCONDIDAS ("Hidden Pictures") is merely descriptive of a feature or characteristic of the goods.

Applicant maintains that "Hidden Pictures" is not merely descriptive of a feature or characteristic of books and magazines for children, citing to the Google definition of "hidden," submitted with the first Office Action, as "kept out of sight, concealed." According to Applicant, its puzzles involve locating objects that are not out of sight or concealed, but involve locating an object that is "right before your very eyes."[9]

---

[9] Applicant's Brief at 5, 7 TTABVUE 8.

*See, e.g.,* Exhibit C-3 to Applicant's Request for Reconsideration,[10] duplicated below:



According to Applicant, "'Hidden' in this context, is far from descriptive, it is ironic. The whole premise of these endearing puzzles is that the objects are not hidden at all. Far from being 'kept out of sight' or 'concealed', each object is out in the open."[11] The Examining Attorney disagrees, and points to the fact that Applicant's Registration No. 2847020 for HIDDEN PICTURES is on the Supplemental Register, and that the marks of Registration Nos. 2873063 and 2996030 were both registered

---

[10] 4 TTABVUE 33.

[11] Applicant's Brief at 5, 7 TTABVUE 8.

under Section 2(f) with "PICTURES" disclaimed, indicating that the acquired distinctiveness goes to HIDDEN, rather than PICTURES; and that "[n]othing about the word 'hidden' requires that the pictures be concealed by a physical barrier. They are equally 'hidden' if they are grouped together with many other images so that they are difficult to detect."[12]

We agree with the Examining Attorney that the proposed mark translated as "Hidden Pictures" describes a feature or characteristic of the goods. One purpose of Applicant's puzzles is to have the reader search for certain objects which are not apparent, *i.e.*, are "hidden" within the puzzle. As the Examining Attorney points out at unnumbered p. 4 of her Brief, the definition of "hidden" in the Google definition from the first Office action includes "unseen." In addition, one definition of "hidden" in the online version of *Merriam-Webster Dictionary*, accessed at http://www.merriam-webster.com/dictionary/hidden, is "1 : being out of sight or not readily apparent."[13] A characteristic of Applicant's puzzles (or pictures) published in its books and magazines is that there are unseen (or not readily apparent) images or "hidden pictures." We find that the Examining Attorney therefore has established that the term "Hidden Pictures" is merely descriptive of a feature of Applicant's goods. In addition, as the Examining Attorney pointed out in the first Office Action,

---

[12] Examining Attorney's Brief at unnumbered p. 4, 9 TTABVUE 5.

[13] We take judicial notice of this definition. The Board may take judicial notice of dictionary definitions, *Univ. of Notre Dame du Lac v. J.C. Gourmet Food Imps. Co.*, 213 USPQ 594, 596 (TTAB 1982), *aff'd*, 703 F.2d 1372, 217 USPQ 505 (Fed. Cir. 1983), including online dictionaries that exist in printed format or have regular fixed editions. *In re Red Bull GmbH*, 78 USPQ2d 1375, 1377 (TTAB 2006).

Applicant owns Registration No. 2847020 on the Supplemental Register for HIDDEN PICTURES which registered for "Multimedia software recorded on CD-ROM featuring computer puzzle games; computer software."[14] "Registration on the Supplemental Register is prima facie evidence that, at least at the time of registration, the registered mark was merely descriptive." *In re Future Ads LLC*, 103 USPQ2d 1571, 1574 (TTAB 2012) (citing *In re Central Soya Co.,* 220 USPQ 914, 917 (TTAB 1984)); *see also Quaker State Oil Ref. Corp. v. Quaker Oil Corp.*, 453 F.2d 1296, 172 USPQ 361, 363 (CCPA 1972) ("We also agree with the observation of the board that, when appellant sought registration of SUPER BLEND on the Supplemental Register, it admitted that the term was merely descriptive of its goods."). Further, Applicant's Registration No. 2873063 is registered under Section 2(f) of the Trademark Act, and hence is a concession that the mark was merely descriptive of the identified goods, at least at the time of application and registration. *Yamaha Int'l Corp. v. Hoshino Gakki Co.*, 840 F.2d 1572, 6 USPQ2d 1001, 1005 (Fed. Cir. 1988) ("Where, as here, an applicant seeks a registration based on acquired distinctiveness under Section 2(f), the statute accepts a lack of inherent distinctiveness as an established fact.").

Applicant points to registrations it has received in Mexico and Chile as evidence that the mark is not merely descriptive to Spanish speakers. The Federal Circuit, in

---

[14] Applicant cancelled "Multimedia software recorded on CD-ROM featuring computer puzzle games" from the registration when it filed its first renewal on May 20, 2014.

addressing the mark ASPIRINA and a mere descriptiveness refusal, stated in *In re Bayer Aktiengesellschaft*, 488 F.3d 960, 82 USPQ2d 1828, 1835 (Fed. Cir. 2007):

> Evidence of registration in other countries is not legally or factually relevant to potential consumer perception of Bayer's analgesic goods in the United States. It is true that the relevant Spanish-speaking consumer population may include people that travel to other countries or to the United States or consumers that access published print and electronic information originating in other countries. However, the fact that ASPIRINA is registered in numerous Spanish-speaking countries alone is not probative of the relevant consumer population's perception of the mark in the United States. … Thus, evidence of registration of ASPIRINA in another country is of little value to our analysis of its entitlement to protection in the United States ….

We therefore find the argument unpersuasive.

Applicant also argues that any doubt as to the descriptiveness of the mark must be resolved in its favor, citing *In re Box Solutions Corp.*, 79 USPQ2d 1953 (TTAB 2006). Suffice it to say, we have no doubts as to the descriptiveness of IMÁGENES ESCONDIDAS as used in connection with Applicant's goods.

In conclusion, the evidence of record establishes that Applicant's proposed mark, IMÁGENES ESCONDIDAS, when considered in relation to "books and magazines for children," immediately informs prospective purchasers as to a feature or characteristic of Applicant's goods. Thus, we conclude that Applicant's proposed mark, IMÁGENES ESCONDIDAS, when used in connection with the identified goods, is merely descriptive.

*Alternative Claim of Acquired Distinctiveness under Section 2(f)*

Applicant claimed acquired distinctiveness under Section 2(f) in the alternative in light of, *inter alia*, (a) its Registration No. 2873063 for the mark HIDDEN PICTURES

on the Principal Register for "magazines, puzzlebooks and an ongoing feature in Highlights For Children magazine," with PICTURES disclaimed; and (b) the alleged fame and recognition of its HIDDEN PICTURES mark. Applicant's argument with respect to the alleged fame and recognition of HIDDEN PICTURES is that "to the extent that the doctrine of foreign equivalents applies and consumers who speak Spanish translate Applicant's mark to HIDDEN PICTURES, they will immediately recognize it [IMÁGENES ESCONDIDAS] as an indicator o[f] origin in Applicant."[15]

We first consider Applicant's reliance on Registration No. 2873063 and then consider its reliance on the alleged fame and recognition of the HIDDEN PICTURES mark.

*Registration No. 2873063*

Trademark Rule 2.41(a)(1), 37 C.F.R. § 2.41(a)(1), states, "In appropriate cases, ownership of one or more prior registrations on the Principal Register or under the Trademark Act of 1905 *of the same mark* may be accepted as prima facie evidence of distinctiveness if the goods or services are sufficiently similar to the goods or services in the application … ." (Emphasis added.) "Thus, an applicant can establish acquired distinctiveness in an intent-to-use application where it can show that 'same mark' acquired distinctiveness for related goods or services, and that this acquired distinctiveness will transfer to the goods or services specified in the application when the mark is used in connection with them." *In re Dial-A-Mattress Operating Corp.*,

---

[15] Request for Reconsideration at 15, 4 TTABVUE 15.

240 F.3d 1341, 57 USPQ2d 1807, 1812 (Fed. Cir. 2001) (citing TMEP § 1219.09(a) (1997)). The Federal Circuit in *Dial-A-Mattress* explained:

> A proposed mark is the "same mark" as previously-registered marks for the purpose of [former[16]] Trademark Rule 2.41(b) if it is the "legal equivalent" of such marks. A mark is the legal equivalent of another if it creates the same, continuing commercial impression such that the consumer would consider them both the same mark. … No evidence need be entertained other than the visual or aural appearance of the marks themselves.

*Id.* (citing *Van Dyne-Crotty, Inc. v. Wear-Guard Corp.*, 926 F.2d 1156, 17 USPQ2d 1866, 1868 (Fed. Cir. 1991)).

Applicant has not cited any legal authority providing that the foreign language translation of an English mark is the "same mark" within the context of Trademark Rule 2.41(b) (see current Trademark Rule 2.41(a)(1)), and we have not located any Federal Circuit or Board cases addressing this issue. The question of whether a foreign language translation of a registered English language mark is the "same mark" within the context of Trademark Rule 2.41(a)(1), therefore, is an issue of first impression. In addition, Applicant and the Examining Attorney have not cited any Office comments offered in connection with the promulgation of this rule, and we have not located any relevant comments.

We turn then to the Federal Circuit's decision in *Dial-A-Mattress* for guidance. As stated therein, a proposed mark is the same mark as a previously-registered mark if it is the "legal equivalent" of the previously-registered mark and a "mark is the legal

---

[16] The USPTO published a notice of final rulemaking in the Federal Register on June 11, 2015, at 80 F.R. 33170. By this notice, Trademark Rule 2.41 was amended; the substance of Trademark Rule 2.41(b) now appears in Trademark Rule 2.41(a).

equivalent of another if it creates the same, continuing commercial impression such that the consumer would consider them both the same mark." *In re Dial-A-Mattress Operating Corp.*, 57 USPQ2d at 1812. *See also Hana Financial, Inc. v. Hana Bank*, 135 S. Ct. 907, 113 USPQ2d 1365, 1367 (2015) ("[T]he general rule adopted by lower courts has been that two marks may be tacked when the original and revised marks are 'legal equivalents.' This term refers to two marks that 'create the same, continuing commercial impression' so that consumers 'consider both as the same mark.'").[17] Under this standard,[18] the result is immediately apparent; IMÁGENES ESCONDIDAS, even though it has the same meaning as HIDDEN PICTURES, is *not* "the same mark" as HIDDEN PICTURES. The marks are entirely different aurally and visually, and we do not read *Dial-A-Mattress* as stating that marks with the same

---

[17] In *Pro-Cuts v. Schilz-Price Enters., Inc.*, 27 USPQ2d 1224, 1226-27 (TTAB 1993), the Board compared legal equivalency to likelihood of confusion:

> A party seeking to "tack" its use of an earlier mark onto its use of a later mark for the same goods or services may do so only if the earlier and later marks are legal equivalents, or are indistinguishable from one another. To meet the legal equivalents test, the marks must create the same commercial impression and cannot differ materially from one another. Thus, the fact that two marks may be confusingly similar does not necessarily mean that they are legal equivalents.

Specifically, the factors used to determine likelihood of confusion "are broad enough to encompass any situation where the marks involved may be different yet alike either in sound, appearance or significance" but the test for tacking requires that the marks involved "would be recognized as one and the same mark." *Compania Insular Tabacalera, S.A. v. Comacho Cigars, Inc.*, 167 USPQ 299, 303-04 (TTAB 1970) (cited in *Van Dyne-Crotty*, 17 USPQ2d at 1868).

[18] Applicant agrees that this is the standard we must consider, stating, "[t]he standard is whether or not the marks create 'the same, continuing commercial impression such that the consumer would consider them both the same mark,'" citing *In re Dial-A-Mattress Operating Corp.*, 57 USPQ2d at 1812. Applicant's Brief at 10, 7 TTABVUE 13.

meaning are "the same mark."[19] *See also Green Spot (Thailand) Ltd. v. Vitasoy Int'l Holdings Ltd.*, 86 USPQ2d 1283, 1287 (TTAB 2008) (in the context of a *Morehouse* defense involving a mark containing Chinese characters and an English transliteration and translation of that mark, the mark with the Chinese characters and the English language mark "create wholly different commercial impressions; here the marks are so different in their visual impressions that even if we were to agree with applicant that the marks are similar in pronunciation or meaning, any similarities are outweighed by the differences"). In fact, the Federal Circuit made clear that "[n]o evidence need be entertained other than the visual or aural appearance of the marks themselves." *In re Dial-A-Mattress Operating Corp.*, 57 USPQ2d at 1812.[20]

Moreover, although the question of whether two marks give the same impression to consumers "involves a factual judgment," *see Hana Bank*, 113 USPQ2d at 1368 n.2, Applicant has provided no evidence demonstrating that consumers would consider IMÁGENES ESCONDIDAS and HIDDEN PICTURES to be the same mark even if they understand the equivalence in meaning. The only support for this proposition is

---

[19] Similarity in appearance and sound may not necessarily result in a finding that two marks are legal equivalents. *See, e.g., In re Nielsen Business Media, Inc.*, 93 USPQ2d 1545, 1547 (TTAB 2010) (THE BOLLYWOOD REPORTER and THE HOLLYWOOD REPORTER "are not legal equivalents because they have different meanings and engender different commercial impressions").

[20] *See also Van Dyne-Crotty,* 17 USPQ2d at 1868, decided prior to *Dial-A-Mattress*, where the Federal Circuit considered the legal equivalence of CLOTHES THAT WORK. FOR THE WORK YOU DO and CLOTHES THAT WORK, and stated, "[i]t does not appear that the Board entertained any other evidence concerning the legal equivalence of these two marks except for the visual or aural appearance of the marks themselves. However, no more was necessary."

Applicant's attorney's representation in its Brief which is not backed up by any evidence, and "[a]ttorney argument is no substitute for evidence." *Enzo Biochem, Inc. v. Gen-Probe Inc.*, 424 F.3d 1276, 76 USPQ2d 1616, 1622 (Fed. Cir. 2005). Thus, we find that IMÁGENES ESCONDIDAS and HIDDEN PICTURES do not create the same continuing commercial impression and Applicant has not established that the consumer would consider them both "the same mark." In other words, Applicant has not demonstrated that any goodwill Applicant may have established in HIDDEN PICTURES will transfer to IMÁGENES ESCONDIDAS.

Applicant points out that

> [t]he Examining Attorney has held that the average American consumer who sees IMÁGENES ESCONDIDAS will stop and translate it, immediately, into "Hidden Pictures". If the Examiner is correct, then IMÁGENES ESCONDIDAS is the legal equivalent of HIDDEN PICTURES and Applicant must be permitted to make a 2(f) claim.[21]

The problem with Applicant's argument is that legal equivalency is not dependent on whether a consumer will stop and translate a foreign word mark. Legal equivalency is dependent on whether the marks create the same continuing commercial impression. *In re Dial-A-Mattress Operating Corp.*, 57 USPQ2d at 1812. In other words, whether two marks are foreign equivalents is a different question than whether two marks give consumers the same commercial impression. As noted, the marks are not similar in sound or appearance, and there is no evidence in the record demonstrating that IMÁGENES ESCONDIDAS and HIDDEN PICTURES create the same continuing commercial impression.

---

[21] Applicant's Brief at 9, 7 TTABVUE 12.

Applicant also argues that "[w]hile it may be true that IMÁGENES ESCONDIDAS and HIDDEN PICTURES are visually and audibly distinct, those differences evaporate when the doctrine of foreign equivalents is applied, as the Examining Attorney has done in this case."[22] We are guided by the statements of the Federal Circuit and Board precedent, and such precedents do not suggest that differences in marks disappear if the doctrine of foreign equivalents is applied. At the end of the day, the record must demonstrate that any distinctiveness residing in the HIDDEN PICTURES mark will transfer to the proposed IMÁGENES ESCONDIDAS mark. *Id.* The record in this case does not persuade us that the acquired distinctiveness in the prior mark will transfer to the proposed mark.

Thus, Applicant has not demonstrated acquired distinctiveness of its proposed IMÁGENES ESCONDIDAS mark through its prior registration for HIDDEN PICTURES. Moreover, even if Applicant were to prevail on appeal on this point and establish that the distinctiveness of its registered marks would transfer to the current mark, these registered marks include a disclaimer of PICTURES and thus there is no distinctiveness in that term that is inherent or acquired. Accordingly, should Applicant prevail on any appeal on its assertion regarding the significance of its prior registrations, we conclude that Applicant would nonetheless have to enter a disclaimer of IMAGENES as the admitted equivalent of PICTURES.

---

[22] Applicant's Reply Brief at 6, 10 TTABVUE 7.

*Alleged Fame and Recognition of HIDDEN PICTURES*

We next consider whether the evidence in the record establishes fame and recognition of HIDDEN PICTURES and, if so, whether, the record demonstrates that because "consumers who speak Spanish translate Applicant's mark to HIDDEN PICTURES, they will immediately recognize it as an indicator o[f] origin in Applicant."[23]

Applicant's attorney has offered the following information regarding the alleged fame of the HIDDEN PICTURES mark:

(a) Applicant has featured HIDDEN PICTURES in its *Highlights* magazine since June 1946;

(b) Applicant has included a HIDDEN PICTURES puzzle on page 14 of each monthly issue of *Highlights* since the late 1960s;

(c) "For many years some of the front covers of a monthly issue of *Highlights* magazine would refer to the HIDDEN PICTURES puzzle contained inside to delight the child receiving the magazine at home or school and to attract attention on newsstands, kiosks and books stores to increase single copy sales";[24]

(d) Applicant's August 2006 issue celebrated 60 years of publishing and "exceeded one billion (1,000,000,000) copies of *Highlights* magazine in print";[25]

(e) The U.S. Postal Service and Applicant jointly presented the Smithsonian's National Postal Museum in Washington, D.C. with a 1946 copy of *Highlights* and a copy of the 1 billionth print run of the August 2006 issue, which are now part of the Museum's historical collection; and

---

[23] Request for Reconsideration at 15, 4 TTABVUE 14-15.

[24] *Id.*

[25] *Id.*

(f) "Beginning with the cover for November 2010, every cover of *Highlights* magazine specifically markets the fact that the magazine contains a HIDDEN PICTURES puzzle because that is far and away the most famous feature of the magazine."[26]

It is preferable for an applicant to submit information of this nature in a showing of acquired distinctiveness in a declaration or an affidavit. *See In re U.S. Tsubaki, Inc.*, 109 USPQ2d 2002, 2006 (TTAB 2014) ("Moreover, there is no actual proof to support these statements in the record. We have only Applicant's counsel's statements as to how Applicant and its competitors sell chains and sprockets. Putting aside whether a declaration from outside counsel could ever qualify as acceptable proof of these sort of facts, we have here no foundational information about counsel's investigation of, or understanding of, Applicant's business, that would put him in a position to make statements regarding the marketing of the products at issue, which in this case is essential to our analysis of the registrability of the mark."); *In re EBSCO Indus., Inc.*, 41 USPQ2d 1917, 1923 n.5 (TTAB 1997) ("such information is more properly submitted in the form of an affidavit or declaration signed by an officer of the applicant … ."). Because Applicant has submitted documentary evidence which supports its attorney's statements, however, we find that the statements are otherwise adequately addressed in the record. *Cf. Martahus v. Video Duplication Services Inc.*, 3 F.3d 417, 27 USPQ2d 1846, 1849 (Fed. Cir. 1993) ("mere attorney arguments unsubstantiated by record evidence are suspect at best").

---

[26] *Id.*

In *Coach Services, Inc., v. Triumph Learning LLC,* 668 F.3d 1356, 101 USPQ2d 1713, 1720 (Fed. Cir. 2012), the Federal Circuit identified "sales, advertising, length of use of the mark, market share, brand awareness, licensing activities, and a variety of goods bearing the mark" as considerations in determining whether a mark is famous. Applicant has not submitted much evidence of the type mentioned in *Coach Services.* In fact, Applicant's evidence is minimal and primarily concerns its HIGHLIGHTS mark, not its HIDDEN PICTURES mark. The fact that HIDDEN PICTURES appears in *Highlights*, which has had a large distribution for a considerable period of time, with over a billion issues printed, does not necessarily translate to fame for the HIDDEN PICTURES mark. It has only regularly appeared in a prominent location, on the cover of Applicant's magazine, since 2010. However, in view of the length of use and the number of *Highlights* magazines which have displayed the HIDDEN PICTURES mark inside the magazines or on its covers, we are persuaded that HIDDEN PICTURES has achieved recognition among the consuming public.

We are not persuaded, however, that "to the extent that the doctrine of foreign equivalents applies and consumers who speak Spanish translate Applicant's mark to HIDDEN PICTURES, they will immediately recognize it as an indicator o[f] origin in Applicant."[27] The strength of the HIDDEN PICTURES mark does not *ipso facto* mean that Spanish speaking consumers will immediately recognize that IMÁGENES

---

[27] Request for Reconsideration at 15, 4 TTABVUE 15. *See also* Applicant's Brief at 12, 7 TTABVUE 15.

ESCONDIDAS represents the same source of "books and magazines for children" as HIDDEN PICTURES. Without additional evidence showing that Spanish-speaking consumers in the United States recognize that IMÁGENES ESCONDIDAS is an indicator of origin in Applicant, especially when Applicant has not used IMÁGENES ESCONDIDAS in the United States, we find Applicant's argument to be unconvincing. Thus, while we have found that Spanish-speaking consumers will stop and translate IMÁGENES ESCONDIDAS into English, Applicant's evidence does not demonstrate that such consumers, if they know of Applicant's HIDDEN PICTURES mark, would recognize Applicant as the source of "books and magazines for children" bearing the proposed IMÁGENES ESCONDIDAS mark.

For the reasons set forth above, based on a review of the evidence of record, Applicant has not demonstrated acquired distinctiveness of its proposed IMÁGENES ESCONDIDAS mark through its reliance on its use of its HIDDEN PICTURES mark.

***Decision***: The mere descriptiveness refusal under Section 2(e)(1) of the Trademark Act is affirmed. In addition, Applicant has failed, in the alternative, to make a sufficient showing of acquired distinctiveness to permit registration of IMÁGENES ESCONDIDAS on the Principal Register under Section 2(f) of the Trademark Act.